**Alexandria**

ETHEL M. TIMBROOK

v.

O'SULLIVAN CORPORATION, et al.

No. 2350-92-4

Decided January 25, 1994

COUNSEL

Robert S. Wasowski (Ashcraft & Gerel, on brief), for appellant.

Nate L. Adams, III (Hall, Monahan, Engle, Mahan & Mitchell, on brief), for appellees.

OPINION

**COLEMAN, J.**—In this workers' compensation appeal, we hold that when an employer discharges a partially disabled employee for unjustifiably failing or refusing to report for selective employment, the employee is not barred from curing the unjustified refusal.

The commission ruled that Ethel Timbrook was forever barred from curing her unjustified refusal of selective employment, based upon our holding in *C&P Telephone v. Murphy*, 12 Va. App. 633, 406 S.E.2d 190, *aff'd on reh'g en banc*, 13 Va. App. 304, 411 S.E.2d 444 (1991). In *Murphy*, we held that a partially disabled employee forfeits his right to cure an unjustified refusal when he is terminated "for cause" and for reasons unrelated to his disability from selective employment provided by his employer at his pre-injury wage. *Id.* The *Murphy* decision, however, is not controlling in Ethel Timbrook's situation because the underlying reason for discharging Timbrook was that, in effect, she refused to report for selective employment, which is not a discharge for a cause unrelated to an injured employee's disability. Thus, the commission erred in applying the *Murphy* rule to hold that Timbrook had forfeited her right to cure her unjustified refusal and to have her suspended benefits reinstated.

Although the commission ruled that Timbrook's discharge for cause barred her right to compensation, it, nevertheless, made a conditional factual finding that, except for the forfeiture, under *Murphy*, Timbrook had made a *bona fide* offer to accept selective employment, and, thereby, would have cured her unjustified refusal. The commission's finding on this issue is supported by credible evidence. Thus, we reverse the commission's holding that Timbrook had forfeited her right to reinstatement of benefits; we uphold the finding that Timbrook had cured her unjustified refusal; and we remand the claim to the commission to lift the suspension and to reinstate Timbrook's award.

I.

Timbrook sustained a broken ankle on November 15, 1989, while working as a factory quality control technician for O'Sullivan Corporation. Relying on a memorandum agreement, the commission

awarded Timbrook temporary total disability benefits beginning November 22, 1989, based on an average weekly wage of $303.74. On May 2, 1990, Timbrook's treating physician released her to return to sedentary work. Timbrook's employer instructed her to return to work in a sedentary job on May 16, 1990. On May 14, 1990, Timbrook spoke with Karen Deuel, O'Sullivan's occupational health nurse and informed her "that she did not see how she could return to work. She [Timbrook] advised her [Deuel] that she would have difficulty in getting to and from the building because she was unable to walk any distance without falling" because she was still in a cast and experiencing pain. She contended that because she was on crutches due to her injury, she was "not able to ambulate in a manner necessary to perform her work." Timbrook did not report on May 16, 17, or 18.

The employer's written policy states that any employee shall be discharged if the employee is absent from work for three consecutive days without giving notice to the employer. On May 29, 1990, the employer informed Timbrook that she had been discharged effective May 18, 1990, for being absent three consecutive days without giving notice.

The employer filed an application for a hearing to suspend Timbrook's compensation benefits for having unjustifiably refused light duty work. The deputy commissioner ruled that Timbrook had unjustifiably refused the selective employment and suspended her compensation benefits. For approximately one year thereafter, Timbrook sought other light duty work on her own and through the Virginia Employment Commission. When her efforts failed, Timbrook contacted O'Sullivan Corporation on March 21, 1991, and requested the sedentary job that she had refused. O'Sullivan denied Timbrook's request, stating that she had been terminated for cause effective May 18, 1990, for violating the company policy regarding unexplained absences. On August 16, 1991, Timbrook obtained other sedentary work as a sewing machine operator at an average weekly wage of $170.

Timbrook applied to the commission for reinstatement of compensation benefits, alleging that she had cured her unjustified refusal of selective employment. The commission denied Timbrook reinstatement of the suspended benefits, ruling that based upon the holding in *Murphy*, Timbrook had forfeited her benefits and was forever barred from reinstatement because she had been discharged for cause from employment provided by her employer. The commission construed *Murphy* to hold that when an employer provides a partially disabled

employee selective employment, and thereafter discharges the employee for cause, "the time during which refusal of selective work continues may be . . . extended indefinitely by the employer" and, thus, an employee discharged for cause could never cure a refusal and seek reinstatement of benefits. The commission found that Timbrook was discharged for cause because she violated the company's rule by failing for three consecutive days to give notice that she would be absent from selective employment.

■ Code § 65.1-63 states: "If an injured employee refuses employment procured for him suitable to his capacity, he shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Industrial Commission, such refusal was justified."[1] An injured employee may "cure" an unjustified refusal of selective employment provided or procured by the employer by accepting such employment or by obtaining comparable selective employment. *Murphy*, 12 Va. App. at 636, 406 S.E.2d at 191; *Thompson v. Hampton Inst.*, 3 Va. App. 668, 670-71, 353 S.E.2d 316, 317 (1987). However, an employee on selective employment offered or procured by the employer, who is discharged for cause and for reasons not concerning the disability, forfeits his or her right to compensation benefits like any other employee who loses employment benefits when discharged for cause. *Goodyear Tire & Rubber Co. v. Watson,* 219 Va. 830, 833, 252 S.E.2d 310, 312-13 (1979); *Marval Poultry Co. v. Johnson,* 224 Va. 597, 601, 299 S.E.2d 343, 345 (1983). The reason for the rule is that the wage loss is attributable to the employee's wrongful act rather than the disability. *Murphy*, 12 Va. App. at 639, 406 S.E.2d at 193. Where the "wage loss [that] is properly attributable to [the] wrongful act" continues, the forfeiture of benefits continues. *Id.*

Timbrook contends that the commission has construed and applied our holding in *Murphy* too broadly. She argues that her situation is distinguishable from Murphy's because she had in good faith agreed to accept the offer of selective employment, whereas Murphy had not. That fact, she says, is significant because without a willingness by Murphy to return to the refused selective employment, he could not

---

[1] Effective October 1, 1991, Code § 65.1-63 was recodified as Code § 65.2-510. The language of the statute was amended to read: "If an injured employee refuses employment procured for him suitable to his capacity, he shall only be entitled to the benefits provided for in § 65.2-603 during the continuance of such refusal, unless in the opinion of the Commission, such refusal was justified." Code 65.2-603 provides for medical benefits.

otherwise have cured his unjustified refusal of selective employment, except perhaps by obtaining comparable employment at his pre-injury wage. Thus, she argues that *Murphy* did not deal with curing an unjustified refusal of selective employment, which is the dispositive issue in her case. She argues that Murphy's entire wage loss continued to be a consequence of his wrongful acts that led to his discharge, as distinguished from her situation, where had she been permitted to accept the selective employment, as she agreed to do, her remaining wage loss would be solely the result of her continued partial disability, not any misconduct on her part.

We do not address this argument by Timbrook, and we need not revisit the *Murphy* decision in order to consider whether the commission is applying it too broadly. The *Murphy* decision does not control Timbrook's case because Timbrook's failure to give notice on three consecutive days that she would be absent from work was not a basis for terminating her for cause when she had affirmatively refused the offer of selective employment. In effect, Timbrook was terminated for refusing to report for selective employment after her doctor released her to return to light work.

It is unreasonable to expect an employee who has affirmatively refused an offer of selective employment to thereafter call and inform the employer that she would be absent from that work which she has refused. It goes without saying that an employee who refuses an offer of selective employment, whether justifiably or unjustifiably, will be absent from work. To impose upon the employee who has refused selective employment a duty to comply with this company rule would require that she give notice every three days that she would be absent from work, or risk termination for cause. Under the commission's finding, Timbrook would have been required to continue to give notice even though she had notified her employer of her refusal to accept the offer of selective employment. The commission erred in finding that Timbrook was terminated for cause. Timbrook's termination was not for cause or for misconduct, as in *Murphy*, that justified a forfeiture of her compensation benefits that could never be cured. Thus, the *Murphy* forfeiture rule does not apply in Timbrook's situation where, in effect, she was terminated for failing to report for selective employment.

■ Furthermore, Timbrook's discharge for refusing to report for selective employment is not "[a] reason[] not concerning [her] disability." In order for a discharge for cause to create a forfeiture of workers'

compensation benefits under the *Goodyear Tire, Marval Poultry*, and *Murphy* cases, the reason for the discharge must not concern the dispute over the disability compensation claim. Timbrook was discharged for failing to report for a job that she contended she could not perform. She contended from the time that O'Sullivan offered the job that she had not recovered to the point that she could perform the work. This dispute was part of the workers' compensation claim.

Although Timbrook's contention was without merit, it was related to her dispute over entitlement to compensation benefits and, therefore, she was discharged for a "reason[] concerning [her] disability." Accordingly, the commission erred in treating Timbrook's situation as one in which she had suffered a wage loss by being discharged for cause and for a reason not connected with her disability. Although her refusal to report to selective employment was determined to be unjustified, under Code § 65.1-63 (now Code § 65.2-510), suspension of benefits for the duration of the refusal is the only authorized sanction. The only question properly before the commission was whether her unjustified refusal of selective employment had been cured. The commission found that Timbrook's request for selective employment was *bona fide* and credible evidence existed to support that finding. Code § 65.1-98.[2]

Having cured her unjustified refusal of selective employment, Timbrook is entitled to a resumption of compensation benefits. We, therefore, reverse the commission's denial of benefits to Timbrook and remand for entry of an award of temporary partial disability benefits.

*Reversed and remanded.*

Barrow, J., and Koontz, J., concurred.

---

[2] Upon recodification, effective October 1, 1991, Code § 65.1-98 became Code § 65.2-706.