COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judges Coleman and Fitzpatrick
Argued at Roanoke, Virginia


LYNCHBURG GENERAL HOSPITAL

v.        Record No. 0343-95-3                OPINION BY
                                      JUDGE JOHANNA L. FITZPATRICK
ANTONIA SPINAZZOLO                          MARCH 26, 1996


         FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Christine Smith (Bernard C. Baldwin, III;
            James O. Watts, IV; Edmunds & Williams, P.C.,
            on brief), for appellant.

            Robert E. Evans for appellee.



     In this workers' compensation case, Lynchburg General

Hospital (employer) appeals the commission's decision awarding

benefits to Antonia Spinazzolo (claimant).  Employer argues that

the commission erred in:  (1) awarding claimant compensation when

she was recovering from surgery for an unrelated condition; (2)

finding that claimant's work release was qualified by her

treating physician; and (3) finding that claimant did not remove

herself from the labor market by attending nursing school full

time.  For the reasons that follow, we affirm the commission.

## BACKGROUND

     Beginning in October 1988, claimant worked for employer as a

phlebotomy technician during the second shift from 3:00 p.m. to

11:30 p.m.  On August 31, 1992, she injured her right wrist, and

employer accepted this injury as compensable.  Prior to her

injury, claimant enrolled as a nursing student at the hospital,

and employer voluntarily worked with her to schedule her work hours around her classes. Until she was injured, claimant had planned to work full time during her first year of nursing school, thirty-two hours per week during her second year, and fewer hours during her third year. Claimant began nursing school as a full-time student in August 1993.

From the date of the accident until September 1993, employer provided claimant continuous light-duty work as a charter,[1] excluding the periods from September 30 to October 15, 1992, and April 22 to June 20, 1993, when she remained totally disabled. In September 1993, claimant returned to her regular employment for two weeks, but again suffered pain and swelling in her hand. When claimant was unable to perform her pre-injury job, her treating physician, Dr. James C. Dunstan, Jr., placed her on restricted duty. Employer again provided her light-duty work as a charter. While claimant was working as a charter, the hospital engaged in "creative scheduling" to coordinate claimant's work and school hours. On December 21, 1993, Dr. Dunstan reported that claimant would have "to give up her Phlebotomist job for a variety of reasons, but I think they all involve the weakness in her right hand and wrist. . . . [S]he's never going to have a normal wrist and the dexterity required of this particular job." Employer eliminated the charter position in December 1993 when

---

[1]Claimant testified that a charter's responsibilities included making copies of test results, taking the copies to the floor, and noting the results on the patient charts.

it began sending the test results to each floor through the hospital computer system.  Claimant did not work from December 1993 to March 1994 because employer had no light-duty jobs available.

After termination by employer, claimant cooperated with the vocational rehabilitation counselor provided by employer and met with him on January 29, 1994, February 18, 1994, and February 23, 1994.  Claimant complied with all of the counselor's requests and submitted several employment applications.  In March 1994, claimant began working at NTS Marketing, Inc. (NTS), a job she obtained through the Virginia Employment Commission (VEC).  NTS offered claimant full-time employment from 9:00 a.m. to 5:30 p.m., but she refused it and worked part time in the late afternoons and evenings so that she could continue her education. She also had a baby-sitting job from March 1994 to May 1994 and worked for a sitter/companion agency.  Claimant sought jobs that would not conflict with her nursing school classes and, at times, worked two jobs.  In August 1994, claimant applied for a courier job with employer, a job that required full-time hours from 10:00 a.m. to 7:00 p.m.  Employer never offered claimant the job because of the potential conflict with her educational plan, but attempted to find someone to split the hours with her.

On May 31, 1994, Dr. Dunstan noted that claimant could attempt work as a phlebotomist on a trial basis, and he reiterated this "work trial" release on July 15, 1994 and August

4, 1994.  However, claimant underwent surgery in June 1994 for an unrelated problem and was unable to work from June 8, 1994 to July 15, 1994.  In his August 25, 1994 deposition, Dr. Dunstan stated that claimant should be able to perform most tasks required of a phlebotomist, but qualified his response:  "I would feel she's definitely able to try this job. . . . If she can do it, great; if the pain is too limiting to her, then I would have to say she couldn't, but I think she's definitely able to try it."  (Emphasis added).  During the deposition, Dr. Dunstan noted claimant's potential problems in performing her pre-injury employment, such as range of motion limitations and difficulty in locating her hand when drawing blood.

Claimant filed an application for benefits beginning April 4, 1994 and continuing.  During her deposition, claimant testified that, at all times, she has been available to work the second shift from 3:00 p.m. to 11:30 p.m., the shift she worked prior to her accident.  Claimant is willing to try her pre-injury employment as a phlebotomist, but employer has not offered her the opportunity.

In awarding claimant benefits, the commission found that: (1) regardless of the unrelated surgery in June 1994, claimant would have remained disabled from her pre-injury employment from June 8, 1994 to July 15, 1994; (2) Dr. Dunstan merely released claimant to perform her pre-injury employment on a "work trial" basis; and (3) although claimant is a full-time nursing student,

4

under the facts of this case, she did not remove herself from the labor market.

**COMPENSATION DURING RECOVERY FOR UNRELATED CONDITION**

Employer argues that the commission erred in finding that claimant was entitled to compensation during the period in which she was recovering from surgery for a condition unrelated to her industrial accident.

On appeal, "we review the evidence in the light most favorable to the prevailing party." R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). "Factual findings of the . . . [c]ommission will be upheld on appeal if supported by credible evidence." James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989).

The commission determined that, "[r]egardless of [her] other conditions, the employee would have remained disabled as a result of the industrial accident for the period claimed." Credible evidence supports this finding. During the period in dispute, claimant had not been released to return to her pre-injury employment. Although claimant's surgery produced a concurrent disability, the evidence established that she had not fully recovered from her compensable injury. The dates of claimant's recovery period for the intervening injury were June 8, 1994 to July 15, 1994, a period prior to Dr. Dunstan's release of claimant to her pre-injury employment on August 4, 1994. Thus, the commission did not err in holding employer responsible for compensation during the disputed period.

**WORK RELEASE**

Employer next contends that the commission erred in finding that claimant's work release was qualified by her treating physician.

In addressing the work release issue, the commission found that, "[a]lthough Dr. Dunstan indicated that the employee could attempt her pre-injury employment on several occasions, there is no absolute release to full duty in the record." Credible evidence supports the commission's finding that Dr. Dunstan did not give claimant an unqualified release to return to her pre-injury employment. In December 1993, Dr. Dunstan indicated that claimant's wrist would never again have the dexterity required of a phlebotomist. During three separate visits from May to August 1994, he told claimant she could attempt her pre-injury employment on a "work trial" basis. Additionally, Dr. Dunstan noted several potential limitations that claimant might encounter in attempting her pre-injury employment, including performing tasks that require a complete range of motion and locating her hand when drawing blood. Under these facts, the commission did not err in finding that Dr. Dunstan qualified claimant's work release.

**FAILURE TO MARKET REMAINING WORK CAPACITY**

Lastly, employer argues that the commission erred in finding that claimant did not effectively remove herself from the labor market by limiting her job search to second-shift work because of

7

her status as a full-time student.

"In order to continue to receive benefits under the Workers' Compensation Act, a claimant who has been injured in a job-related accident must market [her] remaining capacity to work."  Herbert Bros. v. Jenkins, 14 Va. App. 715, 717, 419 S.E.2d 283, 284 (1992).  "What constitutes a reasonable marketing effort depends upon the facts and circumstances of each case." Greif Companies (GENESCO) v. Sipe, 16 Va. App. 709, 715, 434 S.E.2d 314, 318 (1993).

> [I]n deciding whether a partially disabled employee has made reasonable effort to find suitable employment commensurate with [her] abilities, the commission should consider such factors as:  (1) the nature and extent of employee's disability; (2) the employee's training, age, experience, and education; (3) the nature and extent of employee's job search; (4) the employee's intent in conducting [her] job search; (5) the availability of jobs in the area suitable for the employee, considering [her] disability; and (6) any other matter affecting employee's capacity to find suitable employment.

National Linen Serv. v. McGuinn, 8 Va. App. 267, 272, 380 S.E.2d 31, 34 (1989) (footnotes omitted).  "The commission . . . determines which of these or other factors are more or less significant with regard to the particular case."  Id. at 272-73, 380 S.E.2d at 34-35.

In examining a claimant's "intent in conducting [her] job search," the commission must decide "whether it was evident from the employee's conduct that [s]he was acting in good faith in seeking suitable employment."  Id. at 272 n.3, 380 S.E.2d at 34

8

n.3.  "Other factors that the commission should consider include whether the employee voluntarily removed [her]self from the job market,[2] whether the employee underreasonably restricted the geographic area of [her] search, and whether . . . she is capable of being retrained."  Id. at 272 n.5, 380 S.E.2d at 34 n.5 (emphasis added) (citation omitted).  Similarly, another factor that the commission should consider is whether the employee unreasonably restricted her job search by imposing a time limitation, as in the instant case.

"Upon judicial review of the commission's finding that a claimant has made a reasonable marketing effort, the Court must view the evidence in the light most favorable to the prevailing party.  However, where, as here, there is no conflict in the evidence as to the relevant factors, the question of sufficiency is one of law."  Sipe, 16 Va. App. at 716, 434 S.E.2d at 318 (citation omitted).

Under the circumstances existing in this case, we cannot say

_____

[2] Whether a claimant has voluntarily removed herself from a portion of the labor market is only one factor that the commission must consider in determining whether a claimant has reasonably marketed her residual capacity.  A claimant voluntarily removes herself from the labor market if he or she "has the physical capacity for employment at the time of the removal."  Baskerville v. Saunders Oil Co., 1 Va. App. 188, 192, 336 S.E.2d 512, 514 (1985).  However, the commission has held that "mere status as a full time student does not, by itself, establish the employee cannot actively participate in vocational rehabilitation."  Helmick v. Rubbermaid Commercial Prods., Inc., 71 O.I.C. 284, 285 (1992).  "[A]t a minimum, there must be some showing that the employee's status as a full time student interfered with the vocational rehabilitation efforts."  Id.

9

as a matter of law that the commission erred in finding that claimant adequately marketed her residual capacity and did not remove herself from the labor market by continuing to attend nursing school while attempting to work. The commission specifically found as follows:

> [C]laimant cooperated with vocational rehabilitation efforts, obtained employment, attempted to return to her pre-injury employment, and worked while attending nursing school full-time. [She] is also willing to attempt her pre-injury employment again and is available to work full-time hours. These hours are also identical to those required by her pre-injury employment since 1988. Under these circumstances, we find that the employee has not removed herself from the labor market and is entitled to compensation.

In making these findings, the commission implicitly determined that claimant reasonably marketed her remaining work capacity.

The commission must weigh the McGuinn factors in determining whether an employee has adequately marketed his or her remaining capacity to work, and this determination depends upon the facts in each case. One factor may provide greater support for the commission's decision than another based on the overall circumstances in each case. In the instant case, the evidence established that: (1) after her accident, claimant accepted light-duty employment with employer as a charter and worked at the hospital until the charter position was eliminated in December 1993; (2) claimant cooperated fully with the vocational rehabilitation counselor provided by employer by meeting with the

10

counselor three times, submitting several employment applications, and complying with all of the counselor's requests; (3) claimant registered with the VEC and obtained part-time employment at NTS; (4) claimant also worked as a baby-sitter and as a companion, often working two jobs while attending school full time; (5) in August 1994, claimant applied for the courier position at the hospital; (6) employer never offered the courier position to claimant but tried to find someone to split the hours with claimant; (7) before her accident, claimant enrolled as a nursing student and employer engaged in "creative scheduling" to tailor claimant's work hours to her school hours; (8) since October 1988, claimant had worked the second shift from 3:00 p.m. to 11:30 p.m. and, after the accident, claimant was available for second-shift work at all times; and (9) claimant is willing to attempt her pre-injury employment.

Although similar time restrictions on a job search might under other circumstances be unreasonable, credible evidence supports the commission's finding that claimant's limitation of her search to second-shift positions was reasonable in light of her extensive marketing efforts and the history between the parties. Employer essentially lulled claimant into believing that she was not required to find additional full-time employment. Employer coordinated her school hours and work hours before and after her accident by providing claimant with second-shift employment. When claimant applied for the courier position

11

in August 1994, employer did not offer the position to claimant, but instead searched for someone to share the hours with her so that her work would not conflict with her education.[3]  Thus, both her employment history with the hospital as a second-shift employee and employer's affirmative endorsement of claimant's work and school schedule before and after her accident support the commission's finding that claimant reasonably marketed her remaining work capacity and did not remove herself from the labor market by attending school full time.

Accordingly, the decision of the commission is affirmed.

<u>Affirmed</u>.

---

[3]If employer had offered the courier job to claimant, she would have been required to accept it to continue receiving benefits.

12