COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Bumgardner and Humphreys
Argued at Richmond, Virginia


SKIP'S AUTO PARTS/ADP TOTALSOURCE AND
 ROYAL INSURANCE COMPANY OF AMERICA
                                    MEMORANDUM OPINION[*] BY
v.    Record No. 0984-02-2             JUDGE ROBERT J. HUMPHREYS
                                       DECEMBER 31, 2002
DOUGLAS HARRISON CLINE


         FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          S. Vernon Priddy III (Sands, Anderson,
          Marks & Miller, on brief), for appellants.

          Wesley G. Marshall for appellee.


     Skip's Auto Parts/ADP TotalSource and Royal Insurance Company

of America ("employer"), appeal from a decision of the workers'

compensation commission awarding Douglas H. Cline temporary total

disability benefits, beginning September 1, 2001 and continuing.

For the reasons that follow, we affirm the decision of the

commission.

                        I.  Background

     "In accordance with well established principles, we consider

the evidence in the light most favorable to the prevailing party

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.  Further, because this opinion has
no precedential value, we recite only those facts essential to
our holding.

below."  Hillcrest Manor Nursing Home v. Underwood, 35 Va. App. 31, 34, 542 S.E.2d 785, 787 (2001).  So viewed, the evidence here established that Cline injured his back while working as a parts deliveryman for employer.  On August 31, 2001, after employer discovered Cline was taking Percocet, prescribed for the pain resulting from his injury, employer terminated Cline's selective duty employment, which required Cline to drive.

On appeal, employer contends that "[g]iven the [deputy commissioner's] unappealed credibility finding on Cline's daytime use of Percocet," the evidence established employer terminated him for cause.  Thus, employer argues the commission erred in finding Cline adequately marketed his residual work capacity, because he was required to "cure, rather than simply market his residual capacity."  Employer further contends that, in the alternative, Cline's evidence failed to establish that he adequately marketed his residual capacity.  We disagree.

We first note that "[f]actual findings by the commission that are supported by credible evidence are conclusive and binding upon this Court on appeal."  Southern Iron Works, Inc. v. Wallace, 16 Va. App. 131, 134, 428 S.E.2d 32, 34 (1993).  Indeed, "[i]f there is evidence, or reasonable inferences can be drawn from the evidence, to support the Commission's findings, they will not be disturbed on review, even though there is evidence in the record to support a contrary finding."  Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986).

-

However, whether a claimant may be disqualified from benefits for work-related misconduct "is a mixed question of law and fact reviewable by this court on appeal."  Israel v. Virginia Employment Comm'n, 7 Va. App. 169, 172, 372 S.E.2d 207, 209 (1988).

Code § 65.2-510(a) provides that "[i]f an injured employee refuses employment procured for him suitable to his capacity, he shall only be entitled to the benefits provided for in §§ 65.2-503 and 65.2-603 . . . during the continuance of such refusal, unless in the opinion of the [c]ommission such refusal was justified." "This statute does not require that employers make selective employment available.  But the relief thereby afforded an employer when an employee unjustifiably refuses to accept or continue selective employment is limited to those cases in which the employer has provided or procured such employment."  Big D Quality Homebuilders v. Hamilton, 228 Va. 378, 381-82, 322 S.E.2d 839, 841 (1984) (citation omitted).

> In Ellerson v. W. O. Grubbs Steel Erection Co., 1 Va. App. 97, 98, 335 S.E.2d 379, 380 (1985), we held that "in order to support a finding [of refusal] based upon Code [§ 65.2-510], the record must disclose (1) a bona fide job offer suitable to the employee's capacity; (2) procured for the employee by the employer; and (3) an unjustified refusal by the employee to accept the job."

Johnson v. City of Clifton Forge, 9 Va. App. 376, 377, 388 S.E.2d 654, 655 (1990) (en banc).

-

Employer first argues that because of the statements Cline made to personnel and because of the "actions he took at work," employer was "convinced" Cline was taking Percocet "during the day while driving his truck. Concerned about potential liability," employer "placed Cline in an inactive status." Thus, employer contends it "terminated Cline's light duty job for cause as a matter of law."

We have held that

> [a]n injured employee may "cure" an unjustified refusal of selective employment provided or procured by the employer by accepting such employment or by obtaining comparable selective employment. However, an employee on selective employment offered or procured by the employer, who is discharged for cause and for reasons not concerning the disability, forfeits his or her right to compensation benefits like any other employee who loses employment benefits when discharged for cause.

Timbrook v. O'Sullivan Corp., 17 Va. App. 594, 597, 439 S.E.2d 873, 875 (1994) (citations omitted). "The reason for the rule is that the wage loss is attributable to the employee's wrongful act rather than the disability." Id.

Indeed, an employee's "wrongful act" is the linchpin for a "justified" discharge - one which warrants forever barring reinstatement of workers' compensation benefits. See Eppling v. Schultz Dining Programs, 18 Va. App. 125, 128-29, 442 S.E.2d 218, 221-22 (1994). However,

> "[a] justified discharge . . . does not simply mean that the employer can identify

-

> or assign a reason attributable to the employee as the cause for his or her being discharged. Whether the reasons for the discharge is for" cause, "or is" justified for purposes of forfeiting benefits must be determined in the context of the purpose of the Act and whether the conduct is of such a nature that it warrants permanent forfeiture of those rights and benefits. "[T]he [c]ommission . . . must be mindful of the purposes and goals of the" Act.

Walter Reed Convalescent Center v. Reese, 24 Va. App. 328, 336, 482 S.E.2d 92, 97-98 (1997) (quoting Eppling, 18 Va. App. at 128, 442 S.E.2d at 221).

In the case at bar, the commission found that Cline's consumption of the medication was a direct result of the compensable injury that he suffered. In fact, the evidence established that the medication was consistently prescribed to Cline by his treating physician, to take on an as needed basis. Thus, as the commission noted, if we accept employer's claim that it "terminated [Cline's] light duty job" because of his consumption of the medication, the record demonstrates that Cline did nothing to justify termination of his selective employment. Accordingly, the commission did not err in determining that Cline was entitled to the appropriate benefits after September 1, 2001, and was not required to "cure" any "unjustified" refusal of selective employment. See Big D Quality Homebuilders, 228 Va. at 381-82, 322 S.E.2d at 841.

Employer next contends that the commission erred in finding Cline's evidence sufficient to establish that he adequately

-

marketed his residual work capacity after his separation from employment in September. We again disagree.

"In order to continue to receive benefits under the Workers' Compensation Act, a claimant who has been injured in a job-related accident must market his remaining capacity to work." Herbert Bros., Inc. v. Jenkins, 14 Va. App. 715, 717, 419 S.E.2d 283, 284 (1992). We have held that "[w]hat constitutes a reasonable marketing effort depends upon the facts and circumstances of each case." Greif Companies (GENESCO) v. Sipe, 16 Va. App. 709, 715, 434 S.E.2d 314, 318 (1993).

> [I]n deciding whether a partially disabled employee has made [a] reasonable effort to find suitable employment commensurate with his abilities, the commission should consider such factors as: (1) the nature and extent of employee's disability; (2) the employee's training, age, experience, and education; (3) the nature and extent of employee's job search; (4) the employee's intent in conducting his job search; (5) the availability of jobs in the area suitable for the employee, considering his disability; and (6) any other matter affecting employee's capacity to find suitable employment.

National Linen Serv. v. McGuinn, 8 Va. App. 267, 272, 380 S.E.2d 31, 34 (1989) (footnotes omitted). "The commission . . . determines which of these or other factors are more or less significant with regard to the particular case." Id. at 272-73, 380 S.E.2d at 34-35; see also Lynchburg General Hospital v. Spinazzolo, 22 Va. App. 160, 168, 468 S.E.2d 146, 150 (1996).

-

Thus, in examining Cline's "intent in conducting his job search," the commission had to determine "whether it was evident from the employee's conduct that he was acting in good faith in seeking suitable employment." National Linen Serv., 8 Va. App. at 272 n.3, 380 S.E.2d at 34 n.3. On these facts, we find the commission reasonably determined that Cline's job search was made in good faith. Cline established that he registered with the VEC and that he personally contacted approximately 22 employers, inquiring whether they had employment available. The fact that the employers had not advertised positions does not diminish Cline's efforts in this regard. Furthermore, as the commission noted, the fact that several of the positions Cline sought were driving positions is of no consequence. Indeed, the evidence established that Cline's treating physician never restricted his ability to drive.

For the above-stated reasons, we affirm the decision of the commission.

Affirmed.

-