COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judges Petty and McCullough
Argued by teleconference


POWER DISTRIBUTION PRODUCTS, INC. AND
  ARGONAUT INSURANCE COMPANY
                                              MEMORANDUM OPINION[*] BY
v.       Record No. 1324-14-3              JUDGE STEPHEN R. McCULLOUGH
                                                  MARCH 31, 2015
JAMES LOCKARD


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            S. Vernon Priddy III (Cecil H. Creasey, Jr.; Two Rivers Law Group,
            P.C., on brief), for appellants.

            Dan Bieger (Dan Bieger, PLC, on brief), for appellee.

        Power Distribution Products, Inc., the employer, appeals from the commission's decision

to grant appellee workers' compensation benefits.  Power Distribution Products argues that its

former employee, James Lockard, quit his selective employment job and could not "cure" his

unjustified refusal to accept selective employment simply by expressing a willingness to return

to the job on the same day that he resigned.  In this connection, the employer maintains that our

decision in Thompson v. Hampton Institute, 3 Va. App. 668, 353 S.E.2d 316 (1987), is

distinguishable.  Finally, the employer also argues that the commission erred in concluding that

certain issues were not timely raised in the employer's request for reconsideration.  For the

reasons noted below, we affirm the commission's decision.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

As the deputy commissioner noted, "[t]he testimony from all of the witnesses who appeared at the hearing was largely consistent on the essential facts of the case." Power Distribution Products manufactures electrical equipment for the mining industry. James Lockard worked there as a high voltage tester. After he sustained a workplace injury, he accepted work assembling transformers at his pre-injury wage.

During the final inspection of three transformers Lockard helped assemble, Charles Andrew Barrett, the company's Chief Operating Officer, noticed a significant defect in the way the transformer had been assembled. This defect could potentially cause the failure of a $90,000 transformer and endanger the company's reputation. Lockard's immediate supervisor, Jason Jones, summoned Lockard and another employee to a conference room. Barrett informed the group that they would be reprimanded for poor workmanship.

According to Lockard, he responded that he had done the work as he had been instructed to do it, and he did not feel that he should be written up. He rose, left the room, and went back to his work area. According to Barrett, however, Lockard stood up, stated that he would not accept the reprimand, said, "[I]t's been nice knowing you," shook Barrett's hand, and left the room. The recollection of other employees in the meeting was similar to Barrett's.

Lockard knew that the meeting was not over at that point. He later acknowledged that he did not handle the situation correctly. He explained that he had never been written up before and he was in "total shock as to what happened."

Lockard returned to his work area. Teresa Doss, the office manager, was in the meeting with Barrett, Lockard, and the other employees. Doss sent a text message to the shop foreman, Tim Webb, informing him that Lockard had resigned.

Under the company's standard resignation procedure, a company employee supervises while the resigning employee packs up and takes his toolbox home. Lockard told Webb that he was quitting and was going to gather his tools. A short while later, he told Webb, "[W]ell, I'm going to go on back to work." Lockard informed Webb that he would be willing to sign the reprimand so long as "it was honest." At that point, Lockard no longer intended to quit. Webb instructed Lockard to return to his work area and assured Lockard that he would find out what to do.

When Webb reported to Barrett that Lockard had experienced a change of heart, Barrett had already told the corporate office that Lockard had "effectively resigned from his job." Barrett asked Lockard to return to the conference room. Lockard did so. He informed Barrett that he would sign the written disciplinary form. Barrett decided that he needed guidance from the corporate office in West Virginia and asked Lockard to return to his work station. The corporate office took the position that Lockard had resigned and that he would be held to his resignation. Soon after, Barrett informed Lockard that he was no longer employed. About an hour had elapsed between Lockard's return to work and Barrett informing him that he was no longer employed. At that point, Lockard gathered his tools and left the premises. Webb helped Lockard load the tools into his truck.

After this incident, the employer ceased paying benefits. Lockard sought to have them reinstated while the employer sought to terminate them. Following a hearing, the deputy commissioner found that while Lockard had unjustifiably refused selective employment offered by his employer, he had cured that refusal and was, therefore, entitled to benefits. He found that,

> [t]he claimant in good faith advised his employer that he was
> willing to accept the light duty job. The employer refused, electing
> to hold the claimant to his resignation. Thus, the claimant's
> current wage loss could be fairly attributed to the employer's
> actions rather than to his own.

The deputy commissioner considered our decision in <u>Thompson v. Hampton Institute</u> controlling.

The employer filed a request for reconsideration, arguing that the claimant's unjustified resignation precluded the award of benefits. The employer, citing <u>Massie v. Firmstone</u>, 134 Va. 450, 114 S.E. 652 (1922), also contended that the claimant's own testimony that he was able to perform his pre-injury job proved that he failed to establish a continuing disability. The deputy commissioner, by letter dated February 7, 2014, denied the request for reconsideration without further explanation.

The employer sought review by the commission, contending in Part I of its written submission that appellant could not "cure" a refusal to accept selective employment by expressing a willingness to resume work on the same day that he quit the job. In Part II of its written statement, the employer cited <u>Massie v. Firmstone</u> and contended that the claimant's own testimony showed that he was no longer disabled.

In a unanimous decision, the commission adopted the deputy commissioner's findings of fact and rulings of law. The commission could "find no basis to distinguish this case from <u>Thompson v. Hampton Institute</u>." The commission did not address the employer's argument that the claimant's own testimony established that he was capable of performing his pre-injury job and, therefore, had failed to prove that he was disabled.

The employer filed a motion to reconsider, arguing that the commission had overlooked Part II of its written statement. The commission denied the motion, concluding that the argument in Part II "was not raised at the time of the hearing below as a defense to the claim and was first raised in the defendant's February 5, 2014 Request for Reconsideration. We will accordingly not address it."

ANALYSIS

We review the evidence in the light most favorable to the prevailing party below.  States Roofing Corp. v. Bush Constr. Corp., 15 Va. App. 613, 616, 426 S.E.2d 124, 126 (1993).  "Factual findings by the commission that are supported by credible evidence are conclusive and binding upon this Court on appeal."  S. Iron Works, Inc. v. Wallace, 16 Va. App. 131, 134, 428 S.E.2d 32, 34 (1993).  We review issues of law *de novo*.  Masonite Holdings, Inc. v. Cubbage, 53 Va. App. 13, 19-20, 668 S.E.2d 809, 812 (2008).

I.  THE COMMISSION CORRECTLY RULED THAT LOCKARD CURED HIS INITIAL
REFUSAL TO ACCEPT SELECTIVE EMPLOYMENT.

An employer may limit the amount of workers' compensation benefits that must be paid by offering an injured employee work "suitable to his capacity."  Code § 65.2-510(A).  Such employment is commonly referred to as "selective employment."  "If an injured employee unjustifiably refuses selective employment offered by the employer, he or she is 'no longer entitled to receive disability compensation during the continuance of the refusal.'"  ARA Servs. v. Swift, 22 Va. App. 202, 206, 468 S.E.2d 682, 684 (1996) (quoting Va. Wayside Furniture, Inc. v. Burnette, 17 Va. App. 74, 78, 435 S.E.2d 156, 159 (1993)); see Code § 65.2-510(A).

However, "once an employee has cured an unjustified refusal of selective employment, he or she is entitled to reinstatement of benefits."  Food Lion, Inc. v. Newsome, 30 Va. App. 21, 25, 515 S.E.2d 317, 319 (1999); see Code § 65.2-510(B).  "An injured employee may 'cure' an unjustified refusal of selective employment provided or procured by the employer by accepting such employment or by obtaining comparable selective employment."  Timbrook v. O'Sullivan Corp., 17 Va. App. 594, 597, 439 S.E.2d 873, 875 (1994).  In Thompson, we held that,

> when an employee who previously unjustifiably refused selective
> employment which was procured for him, thereafter, in good faith,
> advises his employer that he is willing to accept such work or work
> of like kind, the employer must resume the payments for

- 5 -

> compensable injuries even though the procured selective employment may no longer be available.

3 Va. App. at 671, 353 S.E.2d at 317. We further explained in <u>Timbrook</u> that, when "an employee on selective employment offered or procured by the employer . . . is discharged for cause and for reasons not concerning the disability, [that employee] forfeits his or her right to compensation benefits like any other employee who loses employment benefits when discharged for cause." 17 Va. App. at 597, 439 S.E.2d at 875.

The employer argues that Lockard was no longer working for his employer and, therefore, appellant could not "cure" his refusal to accept the selective employment offered by the employer. The employer argues that <u>Timbrook</u>, rather than <u>Thompson</u>, supplies the rule of decision.

This case, however, does not involve an employee who was terminated for cause.[1] Instead, Lockard resigned in protest to avoid a disciplinary action. A very short while later, about an hour, he withdrew his resignation and expressed a willingness to return to the selective employment. Although Lockard was terminated a short while later, none of the witnesses testified that he was terminated for cause; rather, the corporate office took the view that "he had resigned and we were going to hold him to it." Lockard was "brought back over and informed that he no longer had a position at [Power Distribution Products]." In the words of <u>Thompson</u>, although Lockard "previously unjustifiably refused selective employment," he afterwards – in less than an hour – "advise[d] his employer that he [was] willing to accept such work." 3 Va. App. at 671, 353 S.E.2d at 317. We agree with the commission that <u>Thompson</u> is controlling and that appellant cured his initial refusal to accept selective employment.

---

[1] We do not suggest that the employer could not have terminated Lockard for cause based on his outburst. We simply conclude that the commission did not make such a finding and that the record supports the decision of the commission in this regard.

- 6 -

II. TAKEN AS A WHOLE, APPELLANT'S TESTIMONY CREATED AN ISSUE FOR THE
FACTFINDER.

The employer did not initially defend Lockard's claim for benefits on the basis that appellant was no longer disabled. Following the deputy commissioner's decision, however, the employer moved the commissioner to reconsider, arguing that Lockard's testimony established that he was not disabled. The deputy commissioner denied this request without explanation. The employer again raised this issue before the full commission which did not address it. When the employer moved for reconsideration before the commission, the commission declined, reasoning that the employer's argument was not timely. The employer responds that its request was properly before the commission.[2]

The employer argues that under Massie, Lockard's own testimony shows that he failed to meet his burden of proving his disability. The employer relies on the following exchange, which occurred during Lockard's cross-examination:

> Q. Alright. Well, if, if PDP had had your pre-injury job available in September and offered it to you, you would have taken it; correct?
> A. Yes.
> Q. Alright. And you believe you could have done it; correct?
> A. Yes.

---

[2] The employer's assignment of error is as follows:

> The Full Commission erred in finding that the issues raised in Part II and III of the Defendants' July 21, 2014 Request for Reconsideration to the Full Commission were not timely raised when such issues were raised by a request for consideration directed timely to the Deputy Commissioner on February 5, 2014. Additionally, the Full Commission, by summarily adopting [the] Deputy's findings of fact and rulings of law, adopted the Deputy Commissioner's February 7, 2014 denial of the request for reconsideration and, in doing so, the Full Commission brought such issues forward for consideration on review.

Assuming the commission erred in failing to address this argument, we proceed to address the merits of the argument. We hold that, as a matter of law, Lockard's testimony did not bar the commission from concluding that he was disabled.

Under the longstanding Massie v. Firmstone rule, a party cannot "rise above her own testimony." Bussey v. E.S.C. Rests, Inc., 270 Va. 531, 537, 620 S.E.2d 764, 768 (2005); see also Crew v. Nelson, 188 Va. 108, 113, 49 S.E.2d 326, 328 (1948) ("[W]here a litigant testifies unequivocally to facts within his knowledge and upon which his case turns, he is bound thereby."). The Supreme Court has cautioned that Massie should not be interpreted so as to "cast [a litigant] out of court because of some single, isolated statement which, when taken out of context and pointed to in the cold, printed record on appeal, appears to be conclusive against him." Va. Elec. & Power Co. v. Mabin, 203 Va. 490, 493-94, 125 S.E.2d 145, 148 (1962). Instead, "a litigant's testimony [must] be read as a whole." Id. at 494, 125 S.E.2d at 148. "A damaging statement made in one part of his testimony must be considered in the light of an explanation of such statement made in a later part of his testimony." Id. If after reviewing the litigant's testimony, "taken in its entirety[,] it does not clearly and unequivocally appear that his case is without merit, or if the minds of reasonable men would differ as to the effect of his testimony, he has not fatally damaged his case," and the question becomes one for the factfinder. Id.[3]

Immediately before the exchange the employer cites, Lockard explained that he liked working as an electrical test technician and that he was dissatisfied with the work assembling transformers. He further stated, "I wanted to eventually to get back into my, once they released

---

[3] We assume, for purposes of this opinion, that Lockard's statements constitute statements of fact rather than statements of opinion. Massie "does not apply to statements of opinion." Baines v. Parker, 217 Va. 100, 104, 225 S.E.2d 403, 407 (1976).

me from the medical limitations, I wanted to go back to the test department." Taken as a whole, Lockard's testimony established his desire to return to his former position as an electrical test technician, his dissatisfaction with his current position, *and* his acknowledgment of the medical limitations imposed by his physician. This testimony did not remove the disability question from the province of the factfinder. Accordingly, we find no basis for reversal based on the rule of Massie v. Firmstone.

CONCLUSION

We affirm the decision of the commission.

Affirmed.