30026. PARKS *v.* MARYLAND CASUALTY COMPANY *et al.*

DECIDED JULY 8, 1943. REHEARING DENIED JULY 22, 1943.

*W. H. Smith, T. B. Higdon,* for plaintiff.

*T. Elton Drake, William E. Ball,* for defendant.

STEPHENS, P. J.   Mrs. L. H. Parks filed with the Industrial Board of Georgia a claim for compensation against H. S. Jackson doing business as Jackson Paint Shop, Griffin, Georgia, as employer, and Maryland Casualty Company, as insurance carrier, for compensation for the death of her husband alleged to have been caused from injuries received from an accident arising out of and in the course of his employment with the alleged employer.

It appeared from the undisputed evidence that the claimant's husband, L. H. Parks, was in the employ of H. S. Jackson, owner and operator of Jackson Paint Shop at Griffin, Georgia, for whom he did general repair work, and that the employer sometime during the morning of March 26, 1941, directed Parks to go to Atlanta and take two automobile springs to the Raleigh Drennon Shop to have repaired, and to return to Griffin about 6 o'clock in the afternoon, as the springs were needed on a rush job; that Parks, traveling in his own automobile, proceeded to Atlanta, went to the Raleigh Drennon Shop and delivered the springs to be repaired; that the Raleigh Drennon Shop exchanged one of the springs with Parks, and kept the other spring which the Raleigh Drennon Shop was to repair and send to Griffin; that Parks, after leaving the Raleigh Drennon Shop, instead of proceeding back to Griffin, made visits to several friends, and with one of his friends, partook of intoxicating liquors, and afterwards left by direct route for Griffin in his automobile, with one of the springs therein, which was found in the automobile after the automobile was wrecked; that about eleven o'clock he was found unconscious in his wrecked automobile on the side of the road from Atlanta to Griffin, before reaching Jonesboro; and that he was taken by the person who found him to Grady Hospital in Atlanta, and died the next afternoon.

There was no evidence that Parks, when he was found unconscious by the side of the road, had any odor of whisky on his breath, but there was positive evidence of witnesses to the effect that at the time no odor of whisky was detected on his breath. It appears from the testimony of a doctor at the hospital, who examined Parks after he was brought there, that he had "alcohol-

ism," and that alcohol was smelled on his breath, but the doctor stated that he could not say that the deceased was drunk. Mr. Young, a friend of Parks, with whom he visited in Atlanta, testified that between 8 and 8:30 Parks came to his place of business and had been drinking, but had not had over one drink; that the witness could smell it on Parks's breath; that Parks had a bottle that had not been opened; that he stayed around there with the witness until about 10 o'clock; that they took one drink apiece, and then went to witness's home and had one drink there; that Parks had taken only two small drinks, but that they did not cause him to become drunk or lose his faculties; that the liquor which Parks drank did not affect him; that Parks was not drunk when he left the witness, because Parks carried himself all right; that Parks was not "tight" to the extent that he could not conduct himself all right; that Parks was not of the type to get drunk and stagger and could always go about his business, and could always drive his car all right. The foregoing is the only evidence tending in any way to show that at the time of the accident Parks was intoxicated, or under the influence of liquor.

The uncontradicted evidence of H. S. Jackson, the employer, shows that the car in which Parks was driving was in bad condition and was unsafe for a person to drive; that it would turn over on a curve such as Parks had gone around just before his automobile was wrecked, even if he were running at a speed of 40 to 50 miles an hour; that the car, when found, had turned over; that the shock absorbers were worn; that the car could hardly be kept in the road at all; that the steering gear was in bad shape, resulting from wear and tear mostly; that the car was unsafe to be driven. There is the uncontradicted evidence of Rogers Jackson, an employee at Jackson Paint Shop, that the front end of the car was worn; that the bushings were worn out; that from the condition of the car it would be unsafe for a person to drive it; that a man driving it at a pretty good rate of speed around the curve approaching the place of the accident would be likely to lose control of the car on account of the worn condition in the steering gear; that "if it is right the wheels will go back straight, but the way it was worn, it couldn't do that, it would have locked up." The only evidence tending to establish the speed at which the car was being operated at the time it was wrecked is that of a

county policeman who investigated the wreck and stated that in his opinion, from the condition of the car and the road, the car was running at a speed of 75 miles an hour.

The director of the Industrial Board found as a matter of fact that the accident which caused the death of Parks did not arise out of and in the course of his employment; that Parks's death was occasioned by his personal wilful misconduct in operating his automobile at a rate of speed in excess of that allowed by the law of Georgia, and in operating his automobile "while under the influence of whisky," contrary to law, and denied compensation. This judgment was, on appeal, affirmed by the superior court.

The evidence demands a finding that the accident which caused the death of Parks arose out of and in the course of his employment. At the time of the accident, as appears from the uncontradicted evidence, he was on his way back to Griffin with one of the springs which he had exchanged at the Raleigh Drennon Shop. In so doing he was acting within the course of his employment. The fact that Parks, after his arrival in Atlanta, and after delivering the springs to the Raleigh Drennon Shop pursuant to his duties as an employee of the Jackson Paint Company, went outside of his duties and visited amongst his friends, did not deprive him of the status of an employee in and about his employer's business where he, afterwards, in the discharge of the duties of his employment, proceeded towards Griffin with one of the springs to be delivered to his employer. *Wicker* v. *Fidelity & Casualty Co.*, 59 *Ga. App.* 521 (1 S. E. 2d, 464); *Atlanta Furniture Co.* v. *Walker*, 51 *Ga. App.* 781 (181 S. E. 498). In the latter case it was held that "Although a servant may have made a temporary departure from the service of his master, and in so doing may for a time have severed the relationship of master and servant, yet where the object of the servant's departure has been accomplished and he has resumed the discharge of his duties to the master, the responsibility of the master for the acts of the servant reattaches." In 71 C. J. 678, § 426, it is stated as follows: "Where an employee breaks the continuity of his employment for purposes of his own and is injured before he brings himself back into the line of his employment, the injury does not arise 'out of and in the course of' his employment or 'out of' and 'in the course of' the employment; but where the personal mission has been accomplished and

the employee is once more engaged in the duties of his employment when injured, the injury arises 'out of and in the course of' the employment."

The Code, § 114-105, declares that "No compensation shall be allowed for an injury or death due to the employee's wilful misconduct, including intentionally self-inflicted injury, or growing out of his attempt to injure another, or due to intoxication, or wilful failure or refusal to . . perform a duty required by statute. . . The burden of proof shall be upon him who claims an exemption or forfeiture under this section."

Wilful misconduct or intoxication of an employee which would bar a recovery for injuries sustained by him must be such wilful misconduct or intoxication as proximately caused the injury or death of the employee. *Shiplett* v. *Moran, 58 Ga. App.* 854 (200 S. E. 449). The only evidence tending to show that the claimant's husband, L. H. Parks, the deceased, met his death from an injury by accident caused by his wilful misconduct or from intoxication, consists in the testimony of a policeman who examined the wreck that in his opinion from the condition of the ground and the car, it was at the time of the wreck being operated at a rate of speed of about 75 miles an hour, which is in violation of law, and the testimony of Mr. Young, a friend of the deceased, that the deceased, before he left in his car for Griffin partook of two small drinks of liquor which did not in any way affect the deceased or cause him to lose control of himself, and the testimony of the doctor at the hospital who treated the deceased after he was found in the wreck, that the deceased was suffering from alcoholism and that alcohol could be smelled on his breath, but that the doctor could not say that the deceased was drunk. It appears undisputed from the testimony of the employer, H. S. Jackson, and the other Jackson, referred to above, that the automobile was in such bad condition that it could hardly be kept in the road at all, that its steering gear was bad and the car would turn over on a curve such as Parks had gone around immediately preceding the wreck, even if the car was running at a speed of 40 to 50 miles an hour. It is as clearly inferable from the testimony respecting the bad condition of the car that the wreck was caused from the operation of the car in such condition at a rate of speed less than that prohibited by law as that the wreck was caused by the automobile's

being operated at a speed in excess of 55 miles an hour, in violation of law, or that the wreck was caused by the intoxication of the deceased. In Smith v. First National Bank, 99 Mass. 605 (97 Am. D. 59), it is stated: "When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof. A verdict in favor of the party bound to maintain one of those propositions against the other is necessarily wrong." In United States Fidelity & Guaranty Co. v. DesMoines National Bank, 145 Fed. 273, it is stated: "If the facts are consistent with either of two opposing theories, they prove neither." This evidence is equally consistent with the conclusion that the wreck was caused by the bad condition of the car in which the deceased was traveling as that it was caused by any act of his exceeding the speed limit or as the result of his intoxication. Irrespective of the evidence being insufficient to show that the wreck was caused by the deceased's intoxication, if he were intoxicated, the evidence is insufficient to show that the deceased was intoxicated. Intoxication does not consist merely in having partaken of intoxicating liquor, or in being to some extent under the influence of it. Drunkenness, or intoxication, is a condition where one is under the influence of intoxicating liquors to the extent that he is not entirely at himself, or his judgment is impaired, and his acts or words or conduct is visibly and noticeably affected. *Sapp* v. *State,* 116 *Ga.* 182 (42 S. E. 410). The evidence is insufficient to authorize the conclusion that the deceased was in a state of intoxication, under this definition of drunkenness or intoxication. The only evidence respecting the drinking of intoxicating liquors by the deceased consists in that of his friend Young to the effect that the deceased, when Young first saw him, had been drinking but had not had more than one drink, that after they went to Young's house he took two small drinks; that the liquor which Parks drank did not cause him to become drunk or in any way impair his faculties, and the testimony of the doctor at the hospital that the deceased suffered from alcoholism, and that alcohol could be smelled on his breath, but the doctor stated that he could not say that the deceased was drunk.

Therefore the evidence is insufficient to support the conclusion of the director that the death of the deceased was the result of an

accident caused by his personal and wilful misconduct in operating his automobile at a speed in excess of the limit allowed by law and by his intoxication. The superior court erred in not sustaining the appeal of the claimant.

*Judgment reversed. Sutton and Felton, JJ., concur.*