30539. HERMAN *v.* ÆTNA CASUALTY & SURETY CO.
*et al.*

DECIDED JULY 14, 1944.   REHEARING DENIED JULY 25, 1944.

*Charles G. Bruce,* for plaintiff.
*Martin, Martin & Snow,* for defendants.

PARKER, J. The plaintiff filed with the State Board of Workmen's Compensation a claim against M. S. Jamerson, doing busi-

ness as Atlanta Sand & Supply Co., as employer, and Ætna Casualty & Surety Co., as insurance carrier, for compensation for the death by electrocution of her husband, John W. Herman Jr., alleged to have arisen out of and in the course of his employment as superintendent of a sand-mining plant in Crawford County. The defendants admitted that the deceased was employed by the defendant-employer at the time of his death, but contended that death resulted from wilful misconduct and a disregard of safety rules promulgated by the deceased himself, for observance by the personnel of the plant, which required the wearing of rubber gloves and boots at all times when starting, operating, or working with or upon the electric motors in use at the plant. It was not contended that the rules were such as were required by law to have the approval of the compensation board, but that the death resulted from "wilful misconduct" and the "wilful failure or refusal to use a safety appliance," as contemplated by the Code, § 114-105, the defendants insisting that the statute does not require approval by the board of a safety appliance. The plaintiff established her dependency and rested, whereupon the defendants assumed the burden of proving their claimed exemption from liability. The evidence before the hearing director developed the following facts: That the deceased was found dead lying face downward over the smaller of two electric motors in a pump-house, with the motor running; that the motor was used to propel a hoisting machine and operated upon 550 volts of electricity; that when found his hands and feet were bare; that rubber gloves and boots were both within accessible distance; that no one saw Mr. Herman meet his death; that the motor had been, to the knowledge of the decedent, defective, in that it was shorted or grounded and employees had been shocked when attempting to start and operate the motor; that because of the great extent that water was used in the mining process, the floor and equipment of the pump-house remained wet or damp most of the time; that the deceased had continually cautioned each worker to wear the rubber gloves and boots each time he performed any service in connection with the electric motors. For lack of eyewitnesses it is not shown what task the deceased was performing when he met his death. According to the testimony, he could have been operating the switch that started the motor, or it could have been that he was

reaching over the motor to throw a lever that engaged the clutch to the motor. The claimant insisted that the probability was that he was attempting to throw the clutch lever, contending that the wearing of gloves and boots was not ordinarily necessary to safely operate the clutch-lever. The hearing director found as a matter of fact that the deceased was electrocuted because of his wilful misconduct and his wilfully failing or refusing to employ the safety appliances of rubber gloves and boots, the use of which he had constantly stressed upon his subordinates. Compensation was denied, and the board sustained the findings of the hearing director. The superior court affirmed the action, and the claimant excepted.

■ While the evidence might not demand a finding that the decedent came to his death by electrocution, resulting from his wilful misconduct and wilful failure or refusal to use safety appliances (the gloves and boots), it authorized such a finding. The body was found lying across an electric motor, operating at the time, and there were no coverings on the feet and hands of the body. The evidence showed that electrocution is probable where a bare portion of a human body contacts an instrument electrically charged with 550 volts while another portion of the body is in contact with water or dampness containing foreign chemicals (conductors of electricity) and completing a circuit. It was shown without dispute that all of the subordinate employees had been constantly ordered by the deceased to wear the gloves and boots whenever working about the motors. So it could not be doubted that he was fully aware of the danger incident to working with the motors. And it was shown that both a pair of gloves and a pair of boots were in close proximity. The director had to reach a decision on the facts, and he was justified in concluding as he did rather than finding in favor of the contentions of the claimant. Whether the employee was guilty of wilful misconduct (or other acts of forfeiture) as contemplated by the statute is a question of fact for the compensation board; and the findings of the director and the board upon the questions are final, and will not be disturbed where there is evidence to suport them. *Ætna Life Ins. Co.* v. *Carroll,* 169 *Ga.* 333 (150 S. E. 208). In that case wilful misconduct and violation of a statute were claimed. The "wilful failure or refusal to . . perform a duty required by statute"

is one of several exemptions provided for by the Code, § 114-105, and the language of *Ætna Life Insurance Company* v. *Carroll*, supra, treating with statute violations was necessary and appropriate to uphold in that particular case the finding that the alleged wilful violation of the statute could fall within the exemption contemplated by the law. The principles applicable to a determination as a matter of law of what are acts in disregard of the duties imposed by a statute, are not necessarily the same principles that govern a determination of what constitutes a wilful failure or refusal to use a safety device. Therefore, the excerpts from the *Ætna* case relied on by the claimant do not establish the narrow limitation contended for on the alleged wilful acts of the instant case. Omitting the other acts of exemption and forfeiture given in § 114-105, we would have the following: "No compensation shall be allowed for an injury or death due to the employee's wilful misconduct, . . or wilful failure or refusal to use a safety appliance." The foregoing abridgment is all of the language · (of the code section) applicable to this case. "Any instrumentality provided by the master for use by an employee in the operation of a machine, the use of which in the operation of the machine would reduce the danger or hazard to the employee from the machine's operation, is a safety appliance within the meaning of the expression as used in the workmen's compensation act." *Liberty Mutual Ins. Co.* v. *Perry*, 53 *Ga. App.* 527 (186 S. E. 576). The same authority quotes from the *Ætna* case, supra: "Wilful misconduct includes all conscious or intentional violations of definite law or rules of conduct, as distinguished from inadvertent, unconscious, or involuntary violations;" and adds: "Where a safety appliance provided by the master is located in proximity to the machine and is easily accessible to an employee operating the machine, and its location is known to him, and he has received specific instructions not to operate the machine without the use of the appliance, the operation of the machine by the employee without the use of the appliance constitutes a wilful failure or refusal to use the safety appliance; and where he is injured in the operation of the machine by reason of not having used the appliance, he is, by virtue of the terms of the compensation act, barred of the right to compensation." The evidence clearly authorized the hearing director to find as a matter of fact that the decedent met his death under a situation defined· by the preceding quotations.

468

■ The foregoing principles are not made inapplicable to the case at bar because of the fact that the deceased was the superintendent of the plant and as such promulgated and attempted to enforce the requirements for the use of the safety equipment. His furnishing the instrumentalities was in law the master's act, and the instructions given by the deceased to his subordinates would apply equally to him. The need for the safety articles was recognized by the decedent, and it can not logically be said that operating the motor or some of its attachments by the decedent without gloves and boots automatically revoked a rule that he had made and which he could revoke. ‘ The need for the insulating articles was caused by the inherent nature of electricity and the physical arrangement of the motors, and the necessity for using them could not be removed by the decedent's arbitrary action. If any exception is made, the deceased should be held more accountable for not having followed the requirements for the use of the gloves and boots, for he particularly recognized the danger and stressed it upon his subordinate workers. It is a well-recognized concept that a man is held accountable according to his knowledge and opportunities to learn and behave. To follow the contention of the claimant that the vice-principal could at any time revoke the requirement for the use of the gloves and boots as applied to himself, would to us be equivalent to saying that the enlightened may at any time disregard rules of conduct which the uninformed must at all times obey. The mind and actions of the deceased had no bearing upon the necessity for the use of the safety devices, save as he recognized the need for and enforced the use of the articles. Nothing said in the case of *Pullman Company* v. *Carter,* 61 *Ga. App.* 543 (6 S. E. 2d, 351), is contrary to what we have said or what the authorities cited by us have ruled. In the *Carter* case it appeared that in order for the employee to perform the phase of his work at which he was engaged when he was injured, it was necessary to discard the claimed safety device, which consisted of a painted warning sign provided as a cover for an electric contact socket. The employee was testing electric motors on the car, and the motors had to be in operation, necessitating use of the socket, into which wires furnishing electric current were plugged. No such necessity is presented in the case at bar. We can not conceive of any task in connection with starting or operating the

electric motor wherein gloves or boots would have been in the way and an obstacle to the decedent. Nor can we accept the claimant's contention that the deceased might have been confronted with a sudden emergency or acted inadvertently, unconsciously, or involuntarily, for the evidence is too strong in regard to the stress that he had made on the use of the safety articles and the accessibility of the gloves and boots at the time of the fatality.

■ The authorities cited by the claimant to the effect that the alleged wilful misconduct did not *conclusively* and *as a matter of law* amount to the wilful misconduct contemplated by the statute are not applicable to this case. In those cases the courts were called upon to set aside awards granting compensation where the fact-finding agency had found as a matter of fact that the conduct was not wilful misconduct. The courts declared that the awards would have to stand because the evidence did not demand a finding as a matter of law that the injury resulted from wilful misconduct. We can not ignore the truth of the existence of cases in a twilight zone, so to speak, wherein the adduced facts do not warrant a conclusive finding one way or the other. In such a situation the fact finder must of necessity act favorably to one theory and adversely to the other. The claimant cites authority for her contention that, "When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof. A verdict in favor of the party bound to maintain one of those propositions against the other is necessarily wrong," and, "if the facts are consistent with either of two opposing theories, they prove neither." See *Parks* v. *Maryland Casualty Co.,* 69 *Ga. App.* 720, 725 (26 S. E. 2d, 562). In order for these principles to apply there must be some evidence to sustain the other proposition or theory and not a mere possibility. And then *all* of the facts must *equally* sustain either inconsistent proposition or theory. It can not be said of the instant case that the facts as a whole sustained a theory inconsistent with the claim that the decedent met his death because of his wilful misconduct and wilful failure or refusal to use the safety equipment he knew was necessary to avoid danger. The facts might permit the existence of an unproved theory without sustaining that theory. "Sustain" as used in this connection has the meaning of support or uphold. It is admitted

that the finding against an award of compensation is sustained or supported partially by circumstantial evidence. "When the party upon whom the burden of an issue rests seeks to carry it, not by direct proof, but by inferences, he has not in this reasonable sense, submitted any evidence . . until the circumstances he places in proof tend in some proximate degree to establish the conclusion he claims; and for this, the facts shown must not only reasonably support that conclusion, but render *less probable* all inconsistent conclusions. . . In both cases [civil and criminal] it is required that the circumstances relied upon be not only consistent with the conclusion sought to be established, but also inconsistent with every other *reasonable* hypothesis. In civil cases this consistency with the one and inconsistency with the other is required to be established *only by a mere preponderance;* in criminal cases, to the exclusion of reasonable doubt." (Italics ours.) *Georgia Ry. & Elec. Co.* v. *Harris*, 1 *Ga. App.* 714, 717 (57 S. E. 1076). The defendants placed in proof circumstances that tended in a proximate degree to establish the conclusion they claimed, and the facts shown reasonably support the conclusion, and those facts also render less probable all inconsistent conclusions, such as contended for by the claimant. The compensation board was authorized to so find by a preponderance, and the courts are without power to disturb that finding.

*Judgment affirmed. Sutton, P. J., and Felton, J., concur.*