COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judges Coleman and Elder
Argued at Richmond, Virginia


RICHFOOD, INC. AND OLD REPUBLIC
 INSURANCE COMPANY
                                           OPINION BY
v.    Record No. 1634-94-2      CHIEF JUDGE NORMAN K. MOON
                                         MAY 23, 1995
JAMES A. WILLIAMS


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          R. Ferrell Newman (Glenn S. Phelps; Thompson, Smithers,
          Newman & Wade, on brief), for appellants.

          Louis D. Snesil (McDonald & Snesil, on brief),
          for appellee.



     Appellants, Richfood, Inc. and Old Republic Insurance

Company, appeal the commission's decision to award James A.

Williams temporary partial disability benefits based on its

finding that Williams cured his "constructive refusal of

selective employment."  We find that Williams's employment with

Richfood, Inc. was terminated because of his failure to pass a

drug screening as a condition of employment pursuant to a written

agreement, and we hold that because such termination was for

cause, any subsequent wage loss was due to Williams's wrongful

act rather than his disability, and thus, was not Richfood's

responsibility.  See Chesapeake and Potomac Telephone Co. v.

Murphy, 12 Va. App. 633, 406 S.E.2d 190, aff'd en banc, 13 Va.

App. 304, 411 S.E.2d 444 (1991).

     Williams was employed by Richfood, Inc. beginning in 1985.

On June 17, 1990, Williams sustained a compensable injury to his

back.  Prior thereto, Williams, who admitted to a drug problem, executed a "Conditional Reinstatement Agreement" with Richfood whereby Williams, as a condition of employment, agreed to undergo drug screening at any time upon Richfood's request.  Under the agreement, failure or refusal of drug screening constituted grounds for termination of Williams's employment with Richfood.

After his June 17, 1990 accident, Williams returned to light duty several times to perform work for Richfood.  On several occasions, Williams was asked to undergo drug screening and tested negative for drugs.  In January 1991, Williams stopped working at Richfood altogether because of his back.

In October of 1991, while Williams underwent therapy at the Return to Work Center, Richfood and Williams had discussions concerning his return to work.  Carl Warren, a safety manager at Richfood, testified that he visited Williams at the Center and offered him a position, which Warren had arranged, as an office clerk.  As a condition to obtaining the clerk's position, Warren stated that he told Williams that he would have to pass a drug screening because of the written agreement and company policy requiring anyone out of work for thirty days to pass the screening.  Williams testified that he remembered discussions about the possibility of his return to light duty, but that Warren never made an offer.  Williams admitted that after these discussions, Warren asked him to submit a urine sample for drug screening.[1]

---

[1]  Williams would later recant this position during his second

On November 1, 1991, Williams visited Warren at Richfood and learned from Warren that he was being terminated because he tested positive for cocaine. In December 1991, Richfood filed an application with the Workers' Compensation Commission alleging, in part, that Williams forfeited his right to benefits by being terminated as a consequence of drug use. In September 1992, the commission affirmed the deputy commissioner's "findings of fact and conclusions of law" in favor of Richfood's application to terminate Williams's benefits, ruling that credible evidence was presented to support a finding that "Richfood was prepared to hire [Williams] back on November 1, 1991, but instead terminated him due to the drug use . . . that his unemployment after that date was not due to the injury but rather his own actions." Williams v. Richfood, Inc., 71 O.W.C. 286 (1992) (Williams I).

In September 1993, Williams filed a change of condition application requesting reinstatement of benefits based on his new job as a cook. Richfood defended against the application on the ground that Williams was barred from receiving further disability benefits because he had been terminated for cause from selective employment procured by his employer. In August 1994, the commission reversed the deputy commissioner's decision that Williams's application should be denied pursuant to Murphy. On

hearing before the deputy commissioner in 1993 when he requested reinstatement of his benefits. During the 1993 hearing, Williams was required to prove that he had cured a prior refusal to accept selective employment procured by Richfood, Inc. in order to secure his benefits. Williams stated that he recalled the discussions about his return to work, including the accommodating restrictions, the hours and days to be worked, as well as the rate of pay.

appeal, appellants argue that the August 1994 opinion of the commission (Williams II) is erroneous because it does not comport with the holding of Murphy. We agree and accordingly reverse the commission's decision.[2]

Under the Virginia Workers' Compensation Act, "[i]f an injured employee refuses employment procured for him suitable to his capacity, he shall only be entitled to the benefits provided for in § 65.2-603 during the continuance of such refusal, unless in the opinion of the Commission such refusal was justified."
Code § 65.2-510.

> An injured employee may "cure" an unjustified refusal of selective employment provided or procured by the employer by accepting such employment or by obtaining comparable selective employment. However, an employee on selective employment offered or procured by the employer, who is discharged for cause and for reasons not concerning the disability, forfeits his or her right to compensation benefits like any other employee who loses employment benefits when discharged for cause.

Timbrook v. O'Sullivan Corp., 17 Va. App. 594, 597, 439 S.E.2d 873, 875 (1994) (citations omitted).

In Murphy, we held that "where a disabled employee is terminated for cause from selective employment procured or offered by his employer, any subsequent wage loss is properly attributable to his wrongful act rather than his disability. The employee is responsible for that loss and not the employer." Murphy, 12 Va. App. at 639-40, 406 S.E.2d at 193. The justification for the rule, we reasoned, is that the wage loss is

---

[2] The claimant in Williams I is the same claimant whose case was before the commission in Williams II and is now before this Court on appeal.

attributable to the employee's wrongful act rather than the disability, and in that context, we were "unable to find any provision within the Workers' Compensation Act which evidences an intent by the legislature to place such an employee in a better position than an uninjured employee who is terminated for cause and by his wrongful act suffers a loss of income."  Id. at 639, 406 S.E.2d at 193.

In the present case, Williams II, the deputy commissioner, pursuant to Murphy, ruled that Williams's failure of his drug screening was tantamount to misconduct, justifying his termination for cause, and that he was not entitled to further benefits.  The commission reversed the deputy commissioner, ruling that Williams's prior termination for cause was a "constructive refusal of selective employment" and could be cured.  The commission based its decision on Timbrook, ruling that "misconduct while currently employed that only interferes with job placement efforts of the employer constitutes only a constructive refusal of selective employment and may be cured." The commission's "constructive refusal" analysis is erroneous and its reliance on Timbrook is misplaced.

In Timbrook, the commission denied Timbrook reinstatement of the suspended benefits, ruling that based upon the holding in Murphy, Timbrook had forfeited her benefits and was forever barred from reinstatement because she had been discharged for cause from employment provided by her employer.  17 Va. App. at 595, 439 S.E.2d at 874.  We reversed the commission, holding that "when an employer discharges a partially disabled employee for

- 5 -

unjustifiably failing or refusing to report for selective employment, the employee is not barred from curing the unjustified refusal."  Id.

We noted that <u>Murphy</u> did not control Timbrook's case because "Timbrook's failure to give notice on three consecutive days that she would be absent from work <u>was</u> <u>not</u> a basis for terminating her for cause when she had affirmatively refused the offer of selective employment."  <u>Id.</u> at 598, 439 S.E.2d at 876 (emphasis added).  We further ruled:

It is unreasonable to expect an employee who has affirmatively refused an offer of selective employment to thereafter call and inform the employer that she would be absent from that work which she has refused. It goes without saying that an employee who refuses an offer of selective employment, whether justifiably or unjustifiably, will be absent from work. . . . Timbrook's termination was not for cause or for misconduct, as in <u>Murphy</u>, that justified a forfeiture of her compensation benefits that could never be cured. Thus, the <u>Murphy</u> forfeiture rule does not apply in Timbrook's situation where, in effect, she was terminated for failing to report for selective employment.

<u>Id.</u>

The commission attempts to force the facts of this case to fit the <u>Timbrook</u> scenario by characterizing Williams's drug use as misconduct "that only interferes with the job placement efforts of the employer."  However, <u>Timbrook</u> and Williams's case are inapposite.  Williams's termination, unlike Timbrook's, was clearly <u>for</u> <u>cause</u> and had nothing to do with his "refusal" to report for selective employment.  Furthermore, the reason for Williams's termination was unrelated to his injury and was due solely to his misconduct.  Indeed, the commission first ruled, in

- 6 -

Williams I, that Williams was terminated for cause. Williams cannot, now, attempt to re-characterize his termination as a "constructive refusal of selective employment" in order to qualify for benefits.

We hold, as the commission found in Williams I, that had Williams not tested positive for cocaine, he would have been employed beginning November 1, 1991. At the time of the drug screening, Williams was, for all practical purposes, still under a contract of employment with Richfood, though he was only able to do light duty work which was offered by Richfood and accepted by Williams up until the time of his termination.

Where passing drug and alcohol screening is made a clear and unequivocal condition of employment, as here, pursuant to Williams's contract with Richfood, failure to pass the screening is tantamount to misconduct under <u>Murphy</u> for which an employee can be terminated. Accordingly, we hold that, because the selective employment was procured and made available solely by the efforts of Richfood, Inc., Williams cannot now cure his termination for cause and, therefore, may not have his benefits reinstated.

<u>Reversed.</u>