MANUEL GUICO, APPELLEE, V.
EXCEL CORPORATION, APPELLANT.
619 N.W.2d 470

Filed November 17, 2000.    No. S-99-1406.

Darin J. Lang, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellant.

Roger Moore, of Rehm Law Firm, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

Excel Corporation appeals from a judgment of the Nebraska Workers' Compensation Court awarding temporary total and permanent partial disability benefits, waiting-time penalties, and attorney fees to Manuel Guico as the result of an injury occurring on December 9, 1997. The principal issue at trial and on appeal is whether Guico's injury resulted from his own willful negligence and was therefore not compensable under Neb. Rev. Stat. § 48-101 (Reissue 1998).

## FACTS

Guico was employed by Excel from 1995 until his termination on December 10, 1997, the day following his injury. At the commencement of his employment, Guico attended an orientation session where he was informed of the importance of wearing protective clothing and using the proper safety equipment. Guico was specifically told that he was required to wear steel-mesh gloves and a mesh apron whenever performing tasks involving the use of a knife.

Guico was assigned to various tasks during his employment by Excel. He described his initial work assignment as "trimming the legs of . . . cows," which necessitated the use of a knife. Guico testified that his supervisor on this job explained the importance of wearing the steel-mesh gloves when using a knife. Guico was subsequently reassigned to the task of "deboning the hands" which also required the use of a knife and, accordingly, the wearing of steel-mesh gloves and a mesh apron. Guico understood that he was required to use the mesh safety equipment while deboning because the work involved the use of a knife. Guico testified that when he was assigned to the tasks of trimming legs and deboning, his supervisor talked to him "[a]ll the time" about the importance of using the proper steel-mesh safety equipment so that no one would get cut.

At various times during his employment with Excel, Guico also performed a task described as "rib splitting." Excel's super-

visor in charge of rib splitting was Reynaldo Marquez. Marquez testified that when rib splitting, the worker inserts a 14-inch knife into a beef carcass at the fifth rib and pulls it back toward the worker's chest. He testified that due to the high risk of injury, the rib-splitter position requires the use of more mesh safety equipment than any other job on the floor at Excel. Guico understood that safety equipment was required while rib splitting "[s]o that one would not get cut."

On the day of his injury, Guico was assigned to operate a bone saw. Because that job did not involve the use of a knife, the only required items of safety equipment were cloth gloves and goggles. Guico began his shift at 2:30 p.m. After operating the bone saw for approximately 1½ hours, he decided to switch jobs with a coworker who had been rib splitting. At the time Guico switched jobs, he was wearing three pairs of cloth gloves on his hands. Guico knew he was required to wear mesh safety equipment to split ribs, but testified that he did not have time to put on the equipment because of the speed at which beef carcasses were coming down the continuous chain line. When Guico inserted the knife into the carcass, it slipped and lacerated his right thumb and index finger, resulting in an 11-percent permanent partial disability to his right hand. He admitted it was a mistake not to wear the steel gloves, but stated that he did not intentionally cut himself and "never imagined" that he would be injured. Guico stated that he switched jobs on the day of the injury without donning the steel-mesh safety equipment because he "never thought about" getting cut.

Guico testified at trial that he had performed the rib-splitter job on previous occasions with the knowledge and consent of Marquez and that he did not recall anyone telling him that he could not perform this task. In Guico's deposition, which was received in evidence at trial, he stated that Marquez told him 1 week before the accident that he could switch to the rib-splitter job whenever he wished. He further stated that Marquez did not mention at that time that he needed to wear the correct safety equipment if he switched jobs, although he admitted that he knew this to be a requirement. Guico stated that he switched from operating the bone saw to rib splitting "many times."

Marquez testified that employees under his supervision were allowed to switch jobs only after receiving his permission so that he could be certain that they were using the proper safety equipment. He testified that Guico did not have his permission to switch jobs on the date of the accident. Marquez testified that on the day before the injury, he discovered Guico had switched jobs and was rib splitting instead of performing his assigned task of operating the bone saw. Marquez noted that Guico was not wearing the steel-mesh safety equipment. He verbally reprimanded Guico and told him to go back to the task of operating the saw. Marquez did not write Guico up at that time, but on December 22, 1997, subsequent to Guico's termination, he prepared a handwritten statement describing this incident. When asked on cross-examination about the incident described by Marquez, Guico replied that he did not remember it.

Upon the court's inquiry, Marquez testified that accidents happen even though employees are using the proper safety equipment. He further testified, however, that a person wearing the steel-mesh gloves would not be cut by a knife, because the knife cannot cut through the mesh.

John Thiem, Excel's assistant human resources manager, testified that the work environment at Excel can be dangerous if the proper safety precautions are not followed. Thiem testified that Excel requires all employees using knives to wear steel-mesh gloves and mesh aprons. He testified that violation of a safety rule could result in a verbal warning, a written suspension, or termination, depending upon the severity of the violation. He stated that a minor violation would be wearing equipment improperly or running in the hall. Thiem testified that complete failure to use required safety equipment was a major violation which could result in termination. Thiem testified that he considered the rule requiring the wearing of steel-mesh gloves and mesh aprons when using a knife to be a reasonable rule because it was in place to protect the "life and limb" of an employee.

Thiem testified that during a meeting on the day after the accident, Guico admitted that he was not wearing the required safety equipment at the time of the injury. Thiem informed Guico at this meeting that in view of the fact that Guico had been warned regarding the same behavior on the day before the

injury, Thiem had decided to terminate his employment for failure to obey safety rules. However, Thiem also told Guico that Excel would pay his workers' compensation and medical bills. Upon the court's inquiry, Thiem stated that Excel does not write up all violations, but instead gives verbal warnings at times. He stated that failure to use an apron or gloves should result in a written violation, although he was not aware of a writeup for Guico's December 8, 1997, violation.

Janet Dostal, Excel's workers' compensation coordinator, testified that when Excel employees are injured, they are placed in the light-duty program, which can accommodate almost any type of work restriction. According to Dostal, had Guico not been terminated on December 10, 1997, he would have been able to participate in the light-duty program up through the time he reached maximum medical improvement. Because of his termination, Guico was not offered light duty. Excel did, however, pay his medical bills based upon the representation made to Guico by Thiem at the time he was terminated. Upon the court's inquiry, Dostal testified that the only written disciplinary action in Guico's file unrelated to the accident was a January 31, 1997, disciplinary action for wearing jewelry while on the production floor.

### FINDINGS AND DECISION OF WORKERS' COMPENSATION COURT

On April 28, 1999, the trial judge entered an order finding that Guico was entitled to benefits under the Nebraska Workers' Compensation Act. In its order, the court specifically noted that no Nebraska case addresses whether the failure to follow a safety rule is "willful negligence" as a matter of law. Applying analytical principles discussed in 2 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 33 (2000), the trial judge determined that Excel failed to meet its burden of proving willful negligence on the part of Guico.

The trial judge also found that the evidence did not establish that Guico was terminated for reasons other than his injury. Finally, the trial judge determined there was no reasonable controversy with respect to the compensability of Guico's claim and thus awarded him waiting-time penalties and attorney fees. The final award granted Guico $310.76 per week for 14²/₇ weeks of

temporary total disability, an additional $310.76 per week for 19.25 weeks for an 11-percent permanent partial disability to the right hand, all medical and hospital expenses incurred as a result of the accident, a 50-percent penalty on all outstanding compensation due and owing, and an attorney fee of $2,000.

Excel appealed the decision to a three-judge review panel of the Workers' Compensation Court. The panel issued an order of affirmance on November 3, 1999, in which it found that the trial judge's findings of fact were not clearly wrong, that there was no error of law, and that a detailed opinion would have no precedential value. The review panel also assessed a $2,000 attorney fee against Excel based upon its finding that the appeal did not bring about a reduction of the award. Excel perfected this timely appeal, which we removed to our docket on our own motion pursuant to our authority to regulate the dockets of the appellate courts. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

Excel assigns, restated and renumbered, that the Workers' Compensation Court erred in (1) failing to find that Guico's actions amounted to willful negligence, (2) awarding temporary total disability benefits due to Guico's termination for cause, and (3) awarding waiting-time penalties and attorney fees.

## STANDARD OF REVIEW

An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. Neb. Rev. Stat. § 48-185 (Supp. 1999); *Logsdon v. ISCO Co.,* ante p. 624, 618 N.W.2d 667 (2000); *Miller v. E.M.C. Ins. Cos.,* 259 Neb. 433, 610 N.W.2d 398 (2000).

In determining whether to affirm, modify, reverse, or set aside a judgment of a Workers' Compensation Court review panel, a higher appellate court reviews the findings of the single judge who conducted the original hearing; the findings of the

single judge will not be disturbed on appeal unless clearly wrong. See, *Logsdon v. ISCO Co., supra*; *Bottolfson v. Bag 'N Save*, 259 Neb. 124, 608 N.W.2d 171 (2000). An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Logsdon v. ISCO Co., supra*; *Bottolfson v. Bag 'N Save, supra*.

## ANALYSIS

Compensability under the Nebraska Workers' Compensation Act is determined by § 48-101, which provides:

> When personal injury is caused to an employee by accident or occupational disease, arising out of and in the course of his or her employment, such employee shall receive compensation therefor from his or her employer *if the employee was not willfully negligent at the time of receiving such injury.*

(Emphasis supplied.) The act defines "willful negligence" to include "(a) a deliberate act, (b) such conduct as evidences reckless indifference to safety, or (c) intoxication at the time of the injury." Neb. Rev. Stat. § 48-151(7) (Supp. 1999). As there is no contention that Guico injured himself deliberately or as a consequence of intoxication, the Workers' Compensation Court correctly focused upon whether Guico's conduct at the time of his injury evidenced a reckless indifference to safety.

It is the employer's burden to prove willful negligence on the part of the employee. Neb. Rev. Stat. § 48-107 (Reissue 1998); *Collins v. General Casualty*, 258 Neb. 852, 606 N.W.2d 93 (2000). In order to avoid liability on the basis that the employee was willfully negligent, an employer must prove a deliberate act knowingly done or at least such conduct as evidences a reckless indifference to the employee's own safety. *Collins v. General Casualty, supra*; *Krajeski v. Beem*, 157 Neb. 586, 60 N.W.2d 651 (1953). Mere negligence is not sufficient. The conduct of the employee must manifest a reckless disregard for the consequences coupled with a consciousness that injury will naturally or probably result. *Collins v. General Casualty, supra*. Reckless indifference to safety means more than want of ordinary care. It implies a rash and a careless spirit, not necessarily amounting to wantonness, but approximating it in degree—a willingness to take a chance. *Id.*

As noted by the trial judge, this court has not addressed the specific issue of willful negligence in the context of a worker's violation of a specific safety rule promulgated by an employer. In two cases upon which Guico relies, however, we have considered whether conduct of an employee which was contrary to general principles of industrial safety constituted "willful negligence" within the meaning of the Nebraska Workers' Compensation Act. In *Richards v. Abts*, 136 Neb. 741, 287 N.W. 199 (1939), a worker was killed as the result of an explosion which occurred while he was welding a pressurized tank. Although the employer presented expert testimony that use of an acetylene welding torch upon such a tank as that which exploded was a dangerous practice of which welders were universally aware, we held that this evidence did not establish "willful negligence" because "[t]he proof is lacking that the deceased deliberately, and of his own wilful negligence, failed to take any precaution which he had been taught . . . by his employer, or learned from his own experience." *Id.* at 745, 287 N.W. at 201.

In the second case, *Moise v. Fruit Dispatch Co.*, 135 Neb. 684, 283 N.W. 495 (1939), the resident manager of a company which distributed fruit to wholesale dealers was charged with the duty of inspecting shipments as to which customers registered complaints regarding quality. In response to a complaint by a customer that bananas it had received were too green, the manager entered the room in which the customer stored the bananas. The room contained natural and ethylene gases to hasten ripening of the bananas, and the manager was warned by the customer's personnel prior to entering the room that he should not smoke inside the room because of the danger of explosive gas. As the manager left the room after conducting the inspection, he ignited a match to light his pipe, resulting in an explosion which killed him and others. We rejected the employer's contention that the manager's death was caused by willful negligence on his part. Based upon uncontradicted evidence that the manager was "an inveterate smoker of a pipe," we concluded that it was a proper inference from the facts that he responded automatically to the desire to smoke and ignited the match "without the volition or mental effort essential to the intentional

wilful act of negligence contemplated by the language of the statute." *Id.* at 689, 283 N.W. at 498.

In his treatise, Professor Larson notes that courts have generally not applied what he characterizes as the "wilful misconduct" defense in circumstances where unsafe conduct by an employee, while negligent or thoughtless, is not shown to be intentional or deliberate. 2 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 34.02 at 34-5 (2000). However, he concludes that "the general rule can be stated with confidence that the deliberate defiance of a reasonable rule laid down to prevent serious bodily harm to the employee will usually be held to constitute wilful misconduct, in the absence of . . . specific excuses." *Id.*, § 34.03 at 34-10. This statement has support in the case law. See, e.g., *Adams on Behalf of Boysaw v. Hercules, Inc.*, 21 Va. App. 458, 465 S.E.2d 135 (1995) (affirming finding that employee engaged in "willful misconduct" disqualifying him from benefits under Virginia workers' compensation statute where violation of employer's safety rule requiring permit for access to restricted area containing ether spills was intentional); *Carrico v. Comp. Com'r.*, 127 W. Va. 463, 33 S.E.2d 281 (1945) (reversing award for employee upon determination that injury was due to worker's deliberate and intentional failure to wear safety goggles in violation of employer's rule); *Herman v. Aetna Casualty & Surety Co.*, 71 Ga. App. 464, 465, 31 S.E.2d 100, 101 (1944) (affirming finding that employee's injuries resulted from "wilful misconduct" where he violated a safety rule requiring employees to wear rubber gloves and boots when working with electric motors); *Hamilton v. Swigart Coal Mine*, 59 Wyo. 485, 143 P.2d 203 (1943) (affirming denial of benefits upon finding that miner's injury caused by serious and willful misconduct in violating safety rule which had been clearly explained).

Professor Larson discusses several factors which courts have considered in determining whether the violation of an employer's safety rule should disqualify a worker from benefits, both under statutes which afford a general "willful misconduct" defense and those which specifically provide a defense for safety rule violations. Summarized and restated, these factors include (1) whether an employer has a reasonable rule designed to protect the health

and safety of the employee, (2) whether the employee has actual notice of the rule, (3) whether the employee has an understanding of the danger involved in the violation of the rule, (4) whether the rule is kept alive by bona fide enforcement by the employer, and (5) whether the employee has a bona fide excuse for the rule violation. See 2 Larson & Larson, *supra*, §§ 34 and 35. In the present case, the trial court found as undisputed facts that Excel had "a work rule to the effect that a worker needs to wear a specialized glove when working with knives" and that Guico was not wearing this type of gloves at the time of his injury. Based upon Guico's deposition and trial testimony, it is likewise undisputed that he had actual notice and knowledge of the rule prior to his injury. In this regard, the present case is distinguishable from *Richards v. Abts*, 136 Neb. 741, 287 N.W. 199 (1939).

As to the remaining factors, the trial court specifically found that Guico "did not understand the danger involved in the violation, the rule was not kept alive by bona fide enforcement, and [Guico] did, in fact, have a valid excuse for the violation given the production demands of [Excel]." Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Collins v. General Casualty*, 258 Neb. 852, 606 N.W.2d 93 (2000); *Frank v. A & L Insulation*, 256 Neb. 898, 594 N.W.2d 586 (1999).

It is clear from the record that Guico violated a reasonable safety rule which, if heeded, would have prevented his injury. It is beyond serious dispute that he acted negligently and carelessly. As we have previously noted, however, mere negligence is not the equivalent of "willful negligence" as used in § 48-101, which consists of conduct which manifests a reckless disregard for the consequences coupled with a consciousness that injury will naturally or probably result. *Collins v. General Casualty, supra*. Our standard of review requires that we give considerable deference to a trial judge's determination of whether particular conduct amounted to willful negligence. If the record contains evidence to substantiate the factual conclusions reached by the trial judge of the compensation court, an appellate court is precluded from substituting its view of the facts for that of the compensation court. *Frank v. A & L Insulation, supra*.

The record in this case reflects a factual dispute as to whether Excel employees were permitted to switch jobs without first obtaining permission from a supervisor. At trial, Guico testified that he had performed the rib-splitter job prior to his injury with the knowledge and consent of his supervisor Marquez. He testified that he did not remember if anyone had ever told him he could not do the rib-splitter job. In Guico's deposition, he stated that Marquez told him 1 week before the accident that he could switch to the rib-splitter job at any time he wished. Guico stated that he switched from the bone saw to rib splitting "many times." In contrast, Marquez testified that employees under his supervision were allowed to switch jobs only after receiving his permission so that he could ensure they were using the proper safety equipment. Marquez testified that Guico did not have his permission to switch jobs on the date of the accident.

A trier of fact could reasonably conclude from this evidence that requiring a supervisor's permission to switch jobs was a component of Excel's enforcement of the safety rule at issue, which was not always followed. Accordingly, we are unable to say that the trial judge was clearly wrong in finding that Excel's safety rule "was not kept alive by bona fide enforcement." In addition, when asked on cross-examination if Guico had been "willing to take a chance that [he] wouldn't get cut," he responded, "I never thought about that." When pressed on this point and asked, "You just didn't think that it would happen to you, isn't that right?", Guico responded, "I never thought about getting cut." From this testimony, the trier of fact could reasonably conclude that Guico's failure to comply with the safety rule was a momentary lapse of judgment as opposed to reckless indifference to safety. See *Moise v. Fruit Dispatch Co.*, 135 Neb. 684, 283 N.W. 495 (1939). Accordingly, although we cannot say we would reach the same conclusion in the first instance, we conclude that the trial judge was not clearly wrong in finding that Excel failed to meet its burden of proving that Guico was willfully negligent at the time of his injury.

Excel contends that even if the rejection of its willful negligence defense was correct, Guico was still not entitled to temporary total disability benefits following his termination for cause on the day following his injury. Excel contends that the

termination, not the injury, was the proximate cause of Guico's unemployment and that an award of benefits under such circumstances would place Guico "in a better position than other non-injured employees who have engaged in similar misconduct." Brief for appellant at 22. In support of this argument, Excel cites cases from other jurisdictions denying temporary disability benefits to workers who are placed on light duty following a work-related injury and are subsequently terminated due to misconduct unrelated to the injury, such as tardiness, drug use, or absenteeism. See, e.g., *Richfood, Inc. v. Williams*, 20 Va. App. 404, 457 S.E.2d 417 (1995); *Freeman v. Continental Baking Co.*, 212 Ga. App. 855, 443 S.E.2d 520 (1994); *Dawes v. Summers*, 118 Or. App. 15, 845 P.2d 1308 (1993). We note that these cases are factually distinguishable from the present case, in which the injury and the subsequent termination arose from the same conduct of the worker.

Although *Aldrich v. ASARCO, Inc.*, 221 Neb. 126, 375 N.W.2d 150 (1985), did not involve temporary disability benefits, it offers some guidance as to the relationship between a compensable injury and a subsequent termination of employment for cause. In *Aldrich*, an employee who had sustained a work-related back injury was subsequently terminated for reasons unrelated to the injury. The employer appealed an award of a 30-percent loss of earning power, arguing that because the employee was terminated for reasons other than his injury, his earning power was likewise diminished for reasons other than his injury. We stated:

> Earning power is not synonymous with wages . . . and the fact of termination or the reason for it is irrelevant if the plaintiff sustained a compensable injury. The fact that an employer has terminated the employment of an employee, whose ability to perform the work for which he is fitted has been restricted due to an injury arising out of and in the course of his employment, does not destroy the right of the employee to compensation for the injury.

*Id.* at 128, 375 N.W.2d at 152.

On the facts presented in this case, we conclude that the termination of Guico's employment subsequent to his injury did not disqualify him from receiving temporary disability benefits under the Nebraska Workers' Compensation Act.

■ Finally, we address Excel's contention that the compensation court erred in awarding a waiting-time penalty and attorney fees pursuant to Neb. Rev. Stat. § 48-125 (Supp. 1999) based upon its determination that there was no reasonable controversy with respect to compensability. Whether a reasonable controversy exists under § 48-125 is a question of fact. *Hobza v. Seedorff Masonry, Inc.*, 259 Neb. 671, 611 N.W.2d 828 (2000). A reasonable controversy may exist (1) if there is a question of law previously unanswered by the Supreme Court, which question must be answered to determine a right or liability for disposition of a claim under the Nebraska Workers' Compensation Act, or (2) if the properly adduced evidence would support reasonable but opposite conclusions by the Nebraska Workers' Compensation Court concerning an aspect of an employee's claim for workers' compensation, which conclusions affect allowance or rejection of an employee's claim, in whole or in part. *McBee v. Goodyear Tire & Rubber Co.*, 255 Neb. 903, 587 N.W.2d 687 (1999). We agree with Excel's argument that this case presented a reasonable controversy both factually and legally. As the trial judge noted in the award, this court has not previously addressed the issue of the circumstances under which a violation of an employer's safety rule may constitute willful negligence. Moreover, the evidence in this case supports reasonable but opposite conclusions on this critical issue of fact upon which compensability depended. The trial judge was clearly wrong in concluding that no reasonable controversy existed, and the award of waiting-time penalties and attorney fees constituted error.

## CONCLUSION

For the reasons stated above, we vacate the award of waiting-time penalties and attorney fees pursuant to § 48-125, including the additional fees awarded by the review panel. We affirm the judgment of the compensation court in all other respects.

AFFIRMED IN PART, AND IN PART VACATED.

STEPHAN, J., dissenting.

While I recognize that the scope of our review of factual determinations by the Workers' Compensation Court is exceedingly narrow, it does not require us to ignore undisputed evidence or

abandon common sense. I respectfully dissent because, in my view, the trial judge's analysis of the willful negligence issue was based upon three findings of fact which are clearly wrong.

The first finding involves the question of whether Guico understood and appreciated the danger involved in disobeying the employer's safety rule which is at issue in this case. In concluding that he did not, the trial judge noted that Guico "had never cut himself in the past and testified that he did not expect to cut himself at the time of his accident and injury." This presumably refers to the following testimony by Guico during his direct examination: "Q. Mr. Guico, did you want to cut yourself? A. No. Q. Did you think you were going to cut yourself? A. I never imagined that I would." While this testimony would lead to a reasonable inference that Guico did not commit "a deliberate act" constituting willful negligence under Neb. Rev. Stat. § 48-151(7)(a) (Supp. 1999), it does not rule out the claim made here that he was willfully negligent because of conduct evidencing a "reckless indifference to safety" under § 48-151(7)(b). The record contains substantial and undisputed evidence that Guico fully understood and appreciated the risk involved in using a knife to split ribs without wearing the required safety equipment. Asked if he knew why the steel-mesh safety equipment was required when working as a rib splitter, Guico responded: "So that one would not get cut." He was then asked, "Was it because that job required you to use the knife?" and he responded, "Yes." Guico also admitted that Marquez had informed him "[a] few times" that he could be cut very badly if he did not use the steel-mesh safety equipment. Guico's understanding and appreciation of the danger posed by failure to utilize the safety equipment is demonstrated in the following testimony on cross-examination:

Q. You knew that you needed to wear safety equipment if you were going to do a job with a knife, didn't you?

A: Correct.

Q. You knew that if you didn't have that safety equipment you could get cut very badly, didn't you?

A. That's true.

Q. And you knew that the mesh gloves and the mesh aprons were there to help, so you would not get cut.

A. Correct.

In my view, these admissions by Guico conclusively establish his understanding and appreciation of the danger involved in using a knife to split ribs without wearing the required steel-mesh safety equipment, and therefore the trial court's finding to the contrary was clearly wrong.

The trial judge next noted his "considerable concern" about Excel's enforcement of the rule, finding that despite testimony that its violation was considered "major," there was also "starkly inconsistent and contradictory" evidence indicating that Guico had violated the same rule the day prior to the accident and "virtually nothing" had happened to him. The judge thus found that the only difference between the two violations was that one resulted in injury. In my view, the record does not support this inference. As noted by the majority, Guico was informed of the safety rules at the commencement of his employment and was reminded of the rules throughout his employment. It is undisputed that when Marquez discovered Guico rib splitting without using the required safety equipment on the day prior to the injury, he immediately removed Guico from the job and verbally warned him about the need to use appropriate safety equipment when rib splitting. The fact that Guico was not "written up" or suspended for this incident does not mean that Excel did not enforce its rule. As Professor Larson notes, "enforcement is not necessarily synonymous with application of outright penalties." 2 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law, § 35.03 at 35-8 to 35-9 (2000). In *Iron Company v. Jenkins*, 207 Va. 399, 405, 150 S.E.2d 120, 125 (1966), the court rejected a contention that verbal warnings and reprimands regarding the necessity of compliance with a safety rule did not constitute bona fide enforcement, stating:

> [I]t is not essential that the employer suspend an employee from his job or reduce his wages for violating a work rule in order for there to be "strict enforcement" of the rule. These sanctions may constitute strict enforcement, but the term is not limited to such penalties. Other actions and conduct of the employer, such as existed in the case at bar, may apply with equal force.

I acknowledge authority holding that a worker's violation of an employer's safety rule cannot be asserted as a defense to a

workers' compensation claim where there is evidence that the employer failed to take steps to enforce the rule despite knowledge of its prior violation. See, e.g., *Lori's Fam. Din. v. Indus. Claim Appeals*, 907 P.2d 715 (Colo. App. 1995) (affirming rejection of safety rule defense where record reflected employer was aware of prohibited horseplay in workplace but never followed policies for disciplining employees for such behavior). However, disregard of safety rule violations by the same or other employees is relevant only " 'under circumstances charging the employer with knowledge and acquiescence.' " *Iron Company v. Jenkins*, 207 Va. at 404, 150 S.E. 2d at 124 (followed in *VEPCO v. Kremposky*, 227 Va. 265, 315 S.E.2d 231 (1984)). See, also, 2 Larson & Larson, *supra*, § 35.03. In the present case, there is no evidence that Excel knowingly permitted Guico or any other employee to work with a knife without wearing the required steel-mesh safety equipment, and thus, there is no basis for an inference that Excel acquiesced in the violation of its rule. Also, whether or not Guico was required to obtain permission from a supervisor before switching jobs is immaterial to the issue of enforcement because, as noted above, it is undisputed that at the time of Guico's injury, he was well aware of Excel's requirement that he wear steel-mesh safety equipment whenever he performed the rib-splitter job. For these reasons, I conclude that the finding by the trial judge that Excel's safety rule "was not kept alive by bona fide enforcement" was clearly wrong.

The third factual basis for the trial judge's determination that willful negligence was not shown was a finding that Guico had "a valid excuse for the violation given the production demands of [Excel]." The trial judge reasoned that because rib splitting was performed from a fixed work station on beef carcasses which were moving on a conveyor system on a "continual and constant basis," "there was simply not enough time available to [Guico] to comply with the safety rule of wearing the gloves." This finding rests upon the false premise that Guico was required by Excel to perform the rib-splitter job at the time he was injured. However, the evidence is undisputed that Guico alone made the decision to switch jobs without first donning the required safety equipment. The record reflects no "production demands" which required him to do so. To the contrary, the undisputed evidence is that Guico

was verbally reprimanded by Marquez for precisely the same unsafe conduct on the previous day. His testimony that he did not have time to put on steel-mesh gloves "[b]ecause I was on the saw, and we switched, and it was quick" cannot afford an excuse for his conduct because Guico was not required by Excel to switch jobs and, in fact, was specifically forbidden from doing so without using the required safety apparel. It is important to note that the conduct at issue here is not simply Guico's failure to wear the steel-mesh safety equipment while rib splitting, but, rather, his failure to do so after deciding to switch jobs under circumstances in which, by his own admission, he did not have time to take the required precautions to protect himself from injury. It is undisputed that Guico alone selected the moment at which he switched jobs and that he did so knowing that at that particular moment, he had insufficient time to put on the safety gear which he knew he was required to wear in order to avoid being accidentally cut. Far from excusing Guico's conduct, these facts underscore its recklessness.

Unlike the circumstances in *Moise v. Fruit Dispatch Co.*, 135 Neb. 684, 283 N.W. 495 (1939), Guico's conduct was not automatic or reflexive, but, rather, was the product of the volition and mental effort which characterizes willful negligence as defined by § 48-151(7)(b). The only reasonable inference I can draw from the evidence is that Guico made a conscious and deliberate decision to leave his assigned work station in order to do other work which he preferred without first donning the safety equipment required by Excel's safety rule to prevent precisely the injury which Guico sustained, notwithstanding his verbal reprimand for the same unsafe conduct on the previous day. Based upon this inference, I conclude that the trial judge was clearly wrong in determining that Guico's actions at the time of his injury did not evidence willful negligence consisting of reckless indifference to safety. I conclude that the evidence establishes willful negligence as a matter of law and that Guico's injury was therefore not compensable under Neb. Rev. Stat. § 48-101 (Reissue 1998). Accordingly, I would vacate the judgment of the Nebraska Workers' Compensation Court and remand the cause with directions to dismiss.

CONNOLLY, J., joins in this dissent.