#25013-a-GAS

**2009 SD 46**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

LANCE WELLMAN,             Claimant and Appellant,

v.

SCHAD EXCAVATION, LLC,          Employer and Appellee,

and

GENERAL CASUALTY CO.
OF WISCONSIN                  Insurer and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE A. PETER FULLER
Judge

\* \* \* \*

FRANK DRISCOLL of
Driscoll Law Office, P.C.
Rapid City, South Dakota          Attorneys for appellant.

MICHAEL S. McKNIGHT
CHARLES A. LARSON of
Boyce, Greenfield, Pashby & Welk, LLP
Sioux Falls, South Dakota         Attorneys for appellees.

\* \* \* \*

CONSIDERED ON BRIEFS
ON APRIL 27, 2009

OPINION FILED **06/17/09**

SEVERSON, Justice.

[¶1.]        Lance Wellman appeals the denial of temporary partial disability benefits.  We affirm.

## FACTS

[¶2.]        Wellman suffered a compensable injury when he fractured his left fibula while working for Schad Excavation, LLC (Employer) on May 3, 2005.  At the time, he was earning $15 per hour.  Wellman received medical treatment from Dr. Stewart Fromm and was off work until May 23, 2005.  Wellman's benefit rate was $400 per week, and he received temporary total disability (TTD) benefits from May 4, 2005 through May 31, 2005.

[¶3.]        On May 23, 2005, Dr. Fromm released Wellman to return to work, with restrictions.  Wellman returned on June 1, 2005, at the same hourly pay rate. Cody Schad, Wellman's supervisor, terminated Wellman's employment with Employer on June 20, 2005, due to attendance issues.  Wellman testified that he left work early on several occasions between June 1 and June 20, 2005, because there was insufficient work, but always received permission from either Schad or the supervisor at the job site.  Schad testified that Wellman never received his permission to leave work early, except on two occasions when Wellman's leg was bothering him.  He further insisted there was full-time work available for Wellman, but Wellman chose to leave early.  After being terminated, Wellman did not seek other employment or register with Job Services.  He testified that he did not seek other employment because he was unable to perform manual labor.  He did,

however, complete three excavation jobs using his own track hoe, but testified that these jobs did not require manual labor.

[¶4.]        On November 7, 2005, Wellman was examined by Dr. Cederberg, who assessed Wellman at maximum medical improvement and having a permanent partial impairment. General Casualty (Insurer) subsequently paid Wellman his permanent partial disability (PPD) benefit. Wellman's eligibility for temporary partial disability (TPD) ended on that date.

[¶5.]        Wellman brought a claim against Employer and Insurer for TPD benefits. He acknowledged that all TTD and PPD benefits had been paid, but maintained he was entitled to TPD from the time he returned to work for Employer on June 1, 2005, until he received his impairment rating on November 7, 2005. His claim amounted to approximately $7,500, plus prejudgment interest, and was based upon the difference between the statutory floor of his compensation rate of $400 per week and his actual earnings during that time.

[¶6.]        A hearing was conducted on November 28, 2006, by the South Dakota Department of Labor, Division of Labor and Management (Department). The Department found Schad to be a credible witness, while rejecting much of Wellman's testimony.[1] The Department found that Wellman earned his pre-injury wage per hour between June 1 and June 20, 2005. It further found that Wellman

---

1.    With regard to Wellman's absenteeism, the Department described it as "chronic," and specifically found: (1) Wellman either failed to show up or left early without permission on nine of the possible fourteen workdays between June 1 and June 20, 2005; (2) if Wellman had put forth the effort, he could have earned his pre-injury wage; and (3) the evidence did not support Wellman's contention that work was not available.

was "able to earn" an income between June 20, 2005 and November 7, 2005, but chose not to even though suitable work was available. Therefore, the Department ruled that Wellman was not entitled to TPD benefits.

[¶7.]     Wellman appealed to the circuit court. The circuit court affirmed the Department's decision, concluding that Wellman refused suitable employment and failed to meet his burden of proving either that his termination of employment or inability to find subsequent employment was caused by the compensable injury. Wellman appeals to this Court, raising two issues, which we restate as follows:

> Whether Wellman was entitled to temporary partial disability benefits even though he was terminated for cause and did not seek other employment.

## STANDARD OF REVIEW

[¶8.]     The standard of review in administrative appeals is governed by SDCL 1-26-36. An administrative agency's conclusions of law are reviewed de novo, while questions of fact are reviewed under the clearly erroneous standard. Clausen v. N. Plains Recycling, 2003 SD 63, ¶7, 663 NW2d 685, 687 (citations omitted).

[¶9.]     **Whether Wellman was entitled to temporary partial disability benefits even though he was terminated for cause and did not seek other employment.**

[¶10.]     There is no dispute that Wellman suffered a compensable injury in the course of his employment with Employer. In addition, there is no dispute Wellman was paid TTD and PPD benefits. The only dispute is whether Wellman is due TPD benefits under the facts of this case. Wellman contends that SDCL 62-4-5 does not permit a denial of TPD benefits simply because he was terminated for cause. Moreover, he submits that his lack of income between his termination and receipt of

his impairment rate justifies a benefit award.  Employer maintains that Wellman's loss of income stems from his misconduct, not his injury; therefore, it was appropriate to deny TPD benefits to Wellman.  Whether a claimant is entitled to temporary partial disability benefits even though he was terminated for cause and did not seek other employment is an issue of first impression in South Dakota.

[¶11.]     "The purpose of workers' compensation is to provide for employees who have lost their ability to earn because of an employment-related accident, casualty, or disease."  Dudley v. Huizenga, 2003 SD 84, ¶11, 667 NW2d 644, 648 (citations omitted).  TPD benefits in South Dakota are governed by SDCL 62-4-5 (compensation for partial disability), which provides:

> If, after an injury has been sustained, the employee as a result thereof becomes partially incapacitated from pursuing the employee's usual and customary line of employment, or if the employee has been released by the employee's physician from temporary total disability and has not been given a rating to which § 62-4-6 would apply, the employee shall receive compensation, subject to the limitations as to maximum amounts fixed in § 62-4-3, equal to one-half of the difference between the average amount which the employee earned before the accident, and the average amount which the employee is earning or is able to earn in some suitable employment or business after the accident.  If the employee has not received a bona fide job offer that the employee is physically capable of performing, compensation shall be at the rate provided by § 62-4-3.  However, in no event may the total calculation be less than the amount the claimant was receiving for temporary total disability, unless the claimant refuses suitable employment.

By its very nature, this statute carries at least two logical implications:  first, that the claimant realized a loss of income or earning ability after suffering a compensable injury; and second, the loss of income or earning ability was attributable to the compensable injury.

[¶12.] Wellman was hired by Employer at a pay rate of $15 per hour. In the course of employment, Wellman suffered a compensable injury and was unable to work. During this time, he received $400 per week for TTD. Three weeks later, Dr. Fromm approved Wellman to return to work, but with restrictions. Employer provided work for Wellman within his restrictions and continued to pay him $15 per hour, the same rate of pay he was receiving prior to the injury. Thereafter, Wellman was terminated for violating the employee absentee policy. In denying TPD benefits, the Department reasoned: "From and after June 1, 2005 [the date Wellman returned to work], Employer had suitable work available for Claimant, as evidenced by the wages Claimant admits he earned. Claimant was able to earn his preinjury wage per hour. If he put forth the effort, he could have earned his preinjury wage."

[¶13.] Professor Larson's treatise on workers' compensation provides: "If the record shows no more than that the employee, having resumed regular employment after the injury, was fired for misconduct, . . . with the impairment playing no part in the discharge, it will not support a finding of compensable disability." 4 A. Larson, *Workers' Compensation Law* § 84.04[1] (2007). Here, Wellman's loss of income was not due to his injury, but rather due to his misconduct–he failed to show up to work or left work early without permission on several occasions during a short period of time. *See* Beckman v. John Morrell & Co., 462 NW2d 505, 509-10 (SD 1990) (affirming the denial of claimant's request for TTD benefits because the claimant's "strike participation, rather than a medical problem, precluded him from being offered light duty or favored work"). Furthermore, Wellman's return to work

for Employer after the injury supports the determination that he maintained his *ability* to earn an income, and would have maintained the same income had he worked the requisite hours and not violated the attendance policy. However, the analysis does not end there.

[¶14.] Professor Larson continues, "But if to this record there is added evidence that the claimant has been hampered by the impairment in obtaining or holding other employment, the question is not quite so one-sided." Larson, *supra*, at § 84.04[1]. In some jurisdictions, compensation is denied based solely on the termination for cause, while in others it is allowed upon evidence of a diminution in earning power attributable to the work injury. *See generally id.* at § 84.04[1] nn1, 2 and accompanying text.

[¶15.] The North Dakota Supreme Court was presented with facts similar to this case in *Wendt v. ND Workers Compensation Bureau*, 467 NW2d 720 (ND 1991). The claimant suffered a work-related injury, but was allowed to return to work, with restrictions. *Id.* at 721-22. Employer provided suitable work to the claimant. However, the claimant was later terminated for excessive absenteeism. *Id.* at 722. In response to his request for disability benefits, the Bureau found, in part, that "[c]laimant was not terminated as a result of the work injury," nor did his work injury "prevent him from returning to his former position as a welder at Steiger Tractor and performing all the duties required of that position." *Id.* at 723-24. "The sole reason the claimant is unable to return to work at Steiger Tractor is because he was fired for cause." *Id.* at 724. In affirming the Bureau, the North Dakota Supreme Court rejected the harsh approach that "'an employee who is discharged

for just cause is not entitled to workers' compensation benefits.'" *Id.* at 728 (quoting

Calvert v. Gen. Motors Corp., 327 NW2d 542, 546 (MichCtApp 1982)). Instead, it

adopted the approach set forth by the Minnesota Supreme Court:

> "[A] justifiable discharge for misconduct suspends an injured
> employee's right to wage loss benefits; but the suspension of
> entitlement to wage loss benefits will be lifted once it has
> become demonstrable that the employee's work-related
> disability is the cause of the employee's inability to find or hold
> new employment. Such a determination should be made upon
> consideration of the totality of the circumstances including the
> usual work search 'requirements.'"

*Id.* (quoting Marsolek v. George A. Hormel Co., 438 NW2d 922, 924 (Minn 1989)).

Several other jurisdictions also employ this approach.[2] Rather than denying

---

2. *See*, e.g., Ariz. Dep't of Pub. Safety v. Indus. Comm'n, 861 P2d 603, 609 (Ariz 1993) (holding that a claimant who is receiving workers' compensation benefits does not automatically forfeit them if the claimant is terminated for misconduct); Stewart v. CRS Rinker Materials Corp., 855 So2d 1173, 1177 (FlaDistCtApp 2003) ("Even though a claimant may be terminated from his or her employment for insubordination, the claimant may still be entitled to benefits if he or she satisfies the burden of demonstrating that the injury contributed to the wage loss *after* the termination.") (emphasis in original) (citation omitted); Augusta Coca-Cola Bottling Co. v. Carter, 322 SE2d 365, 366 (GaCtApp 1984) (concluding that claimant would be entitled to receive disability benefits for loss of earning capacity if he was unable to find other employment because of his disability, even though he was discharged for cause); E.F.P. Corp. v. Pendill, 413 NE2d 279, 281 (IndCtApp 1980) (holding that where claimant suffered a compensable injury, but was fired for unrelated reasons and was unable to employment elsewhere because of a recurrence of his injury, disability benefits were due); Bernard v. Mead Publ'g Paper Div., 765 A2d 576, 579 (Me 2001), (claimant's termination for misconduct did not disqualify him for compensation benefits based on his work-related injury) *superseded by statute on other grounds*, 39-A MeRevStatAnn §224, *as recognized in* Morissette v. Kimberly-Clark Corp., 837 A2d 123 (Me 2003); Guico v. Excel Corp., 619 NW2d 470, 479 (Neb 2000) (concluding that the fact that an employee has been terminated does not destroy his right to receive compensation for the restriction placed on his ability to perform work); Cunningham v. Atl. States Cast Iron Pipe Co., 901 A2d 956, 959-61 (NJSuperCtAppDiv 2006) (adopting the rule that if the

(continued . . .)

benefits solely on the basis of termination for cause, we adopt this approach, finding it more in tune with our statutory language and the purpose of workers' compensation.

[¶16.]     Under this approach, the claimant has the burden of proving that the work-related disability hampered his ability to obtain or hold other employment after being terminated. *Wendt*, 467 NW2d at 728 (claimant must demonstrate that his work-related disability is the cause of his inability to find suitable employment); *see also* Day v. John Morrell & Co., 490 NW2d 720, 724 (SD 1992) ("the claimant has the burden of proving all the facts essential to compensation") (citations omitted). It is undisputed that Wellman made no attempt to secure employment with another employer after being terminated. Rather, he adjudged, on his own accord, that no one would hire him because of his disability. However, he provided no other testimony or evidence that his disability deprived him of an income, decreased his income, or otherwise hampered his ability to earn an income.

---

(. . . continued)

worker could show he actually lost income because of his disability, he would be entitled to receive disability benefits, despite his discharge for cause), *cert. denied*, 909 A2d 726 (NJ 2006); Seagraves v. Austin Co. of Greensboro, 472 SE2d 397, 401 (NCCtApp 1996) (same); State *ex rel.* Sanese Servs. v. Indus. Comm'n, 680 NE2d 991, 992-93 (Ohio 1997) (declaring that employee conduct should not be the "preeminent" factor determining wage loss); RSG Forest Prods. v. Jensen, 873 P2d 324, 326 (OreCtApp 1994) ("Because claimant 'left work' and suffered a loss of earnings related to his injury, the fact that employer fired claimant for reasons unrelated to his injury does not preclude him . . . from receiving interim compensation."); Howze v. Workers' Comp. Appeal Bd., 714 A2d 1140, 1142 (PaCommwCt 1998) (concluding that because the claimant's loss of wages was due in part to his work-related injury, claimant was entitled to continue receiving his benefits, even after he was terminated for cause).

Wellman's self-serving testimony, without more, is insufficient to meet his burden of proof.

[¶17.]    In conclusion, termination for cause does not automatically preclude a claimant from receiving TPD benefits he would otherwise be awarded.  However, in order to receive such an award, the claimant bears the burden of proving loss of income or ability to earn an income attributable to the work-related disability.  Wellman failed to meet this burden.  Therefore, we affirm the Department and circuit court's denial of TPD benefits to Wellman.

[¶18.]    GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices concur.