#25000-r-JKM

**2009 SD 47**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

KEVIN MCKIBBEN,                                         Appellant,

v.

HORTON VEHICLE COMPONENTS,
INC. and AMERICAN HOME
ASSURANCE COMPANY,                              Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE LORI S. WILBUR
Judge

\* \* \* \*

BRAM WEIDENAAR of
Hoy Trial Lawyers, Prof. LLC
Sioux Falls, South Dakota                    Attorneys for appellant.

PATRICIA A. MEYERS
STEPHEN C. HOFFMAN of
Costello, Porter, Hill, Heisterkamp,
Bushnell & Carpenter, LLP
Rapid City, South Dakota                     Attorneys for appellees.

\* \* \* \*

CONSIDERED ON BRIEFS
ON FEBRUARY 17, 2009

OPINION FILED **06/17/09**

#25000

MEIERHENRY, Justice

[¶1.]     Kevin McKibben sought vocational rehabilitation benefits after he was injured at work.  An administrative law judge for the Department of Labor (DOL) determined that McKibben was entitled to vocational rehabilitation benefits from employer Horton Vehicle (Horton).  Horton and Horton's insurer, American Home Assurance (AHA) Company, appealed the determination to circuit court.  The circuit court reversed the award of benefits, and McKibben appeals.  We reverse the circuit court and affirm the DOL.

## BACKGROUND

[¶2.]     McKibben worked at Horton's Britton, South Dakota facility as an intermediate machinist.  On February 14, 2004, McKibben suffered a work-related injury while lifting some parts from a basket.  He notified his supervisor and immediately sought medical attention.  The physician on staff at the hospital in Aberdeen, South Dakota, examined McKibben and determined that McKibben had an inguinal hernia[1] in his lower abdomen.  Surgery was scheduled for the next day with Dr. Roger Werth, a general surgeon.  Dr. Werth performed surgery and repaired the herniated area of the abdominal wall with mesh.

[¶3.]     After the surgery, McKibben continued to experience sharp, shooting pain.  McKibben testified that the pain increased with activity, such as walking,

---

1.     "Inguinal hernias occur when soft tissue — usually part of the intestine — protrudes through a weak point or tear in your lower abdominal wall.  The resulting bulge can be painful — especially when you cough, bend over or lift a heavy object." *Mayoclinic.com*, http://www.mayoclinic.com/health/inguinal-hernia/DS00364 (last visited May 5, 2009).

#25000

and only decreased when he reclined. McKibben consulted with Dr. Werth regarding the lingering pain. Dr. Werth kept McKibben on a light work schedule to see if McKibben's pain abated. McKibben's pain level did not improve. Consequently, Dr. Werth performed a second surgery on McKibben on June 7, 2004, to explore the possibility of ilioinguinal nerve entrapment[2] occurring under the mesh or around the original surgery site.

[¶4.]    The second surgery still did not alleviate McKibben's pain symptoms in the groin area. Dr. Werth referred McKibben to Dr. Heloise Westbrook, a pain specialist. Westbrook prescribed nerve block injections for the pain. The injections initially provided relief; however, the pain returned within twenty-four hours after the injection. McKibben refused additional injections because of the intensity of the pain following the injections. Dr. Werth then referred McKibben to Dr. O'Leary, in Minneapolis, Minnesota, for further treatment. Dr. O'Leary performed surgery to explore the groin area and repair the nerve that appeared to be causing the pain. This third surgery abated some of McKibben's pain but did not alleviate the pain in his upper groin.

[¶5.]    In December of 2004, McKibben returned to work at Horton in a light duty job as a basic machinist. In addition to the light duty job, Horton made accommodations for McKibben's pain. Horton allowed McKibben to take frequent breaks and provided an area to recline during the breaks. McKibben would work

---

2.    The ilioinguinal nerve provides sensory branches to the pubic area. Nerve Entrapment Syndromes of the Lower Extremity, EMedicine, http://emedicine.medscape.com/article/1234809-overview (last visited May 5, 2009). Nerve entrapment symptoms include pain in the lower abdomen, groin, scrotom in males, and labia majora in females. *Id.*

for about one hour to an hour and forty-five minutes, then take a ten to fifteen minute break before resuming his work. He testified that after about an hour of work, the pain became so severe it caused him to cry. When this occurred, he informed his supervisor and went home. McKibben attempted to work three twelve-hour shifts at Horton each week but was not able to work a shift of more than three and one-half hours per day because of the pain.

[¶6.] At the request of Horton and AHA, McKibben underwent a Functional Capacity Evaluation (FCE) early in February, 2005, and an examination by their selected physician, Dr. Farnham. Based on his examination and the FCE, Farnham determined that McKibben suffered 15% impairment to his whole person as a result of his injury. Farnham also concluded that McKibben could return to work eight hour shifts as a machinist with lifting restrictions of twenty-five pounds. The FCE recommended a work-hardening program to strengthen McKibben's core, knee, and hip muscles. McKibben also underwent a brief psychological exam at the request of Jim Miller, the workers' compensation representative on his case. As recommended, McKibben entered a work-hardening program. McKibben participated in four sessions but missed several other sessions due to illness, lack of child care, and pain. McKibben testified that he eventually discontinued the work-hardening sessions because the sessions aggravated his pain.

[¶7.] McKibben continued to report for work at Horton but was unable to work a full shift. Horton notified McKibben on April 15, 2005, that he would need a doctor's note each time he could not complete a full shift. McKibben did not seek a doctor's note. McKibben explained, at the hearing, that he did not see a doctor

because he was uncertain which doctor he was supposed to see. He also explained that Dr Westbrook had already told him there was nothing else she could do to reduce his pain. Horton fired McKibben for failing to provide a doctor's note.

[¶8.]        After his termination, McKibben sought employment in the surrounding area. He found no work suitable to his status and applied for vocational rehabilitation services through the Department of Human Services. McKibben was approved for and began a course in computer assisted drafting over the internet. He sought workers' compensation vocational rehabilitation benefits to pay for the course. *See* SDCL 62-4-5.1. Horton and AHA denied his request for vocational rehabilitation benefits.

[¶9.]        McKibben appealed the denial of benefits to the DOL. An administrative law judge (ALJ) conducted a hearing and determined that McKibben was entitled to twenty-seven weeks of vocational rehabilitation benefits in the amount of $10,588.38, including interest, for the course work he had completed prior to the hearing and to an additional seventy-seven weeks of prospective benefits in the amount of $30,196.50, including interest. Horton and AHA appealed the DOL's decision to circuit court. The circuit court reversed the DOL's decision and determined that McKibben was not entitled to vocational rehabilitation benefits. McKibben appeals. The issue on appeal is whether the circuit court erred in reversing the DOL's determination that McKibben was entitled to vocational rehabilitation benefits.

## STANDARD OF REVIEW

[¶10.]     The standard of review of an administrative proceeding is set forth in

SDCL 1-26-36 as follows:

> The court shall give great weight to the findings made and inferences drawn by an agency on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> > (1) In violation of constitutional or statutory provisions;
> >
> > (2) In excess of the statutory authority of the agency;
> >
> > (3) Made upon unlawful procedure;
> >
> > (4) Affected by other error of law;
> >
> > (5) Clearly erroneous in light of the entire evidence in the record; or
> >
> > (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
>
> A court shall enter its own findings of fact and conclusions of law or may affirm the findings and conclusions entered by the agency as part of its judgment. The circuit court may award costs in the amount and manner specified in chapter 15-17.

SDCL 1-26-36. The statute applies to circuit court review of an agency decision as

well as to appeals to this Court from the circuit court's review. Capital Motors, LLC

v. Schied, 2003 SD 33, ¶10, 660 NW2d 242, 245.

[¶11.]     The Supreme Court reviews the agency decision "de novo: unaided by

any presumption that the trial court is correct." *Id.* Thus, a trial or appellate court

must give great weight to an agency's findings and may only reverse if the findings are found to be "clearly erroneous in light of the entire evidence in the record." SDCL 1-26-36 (5). An error of law, however, is fully reviewable. SDCL 1-26-36 (4); Lends His Horse v. Myrl & Roy's Paving, Inc., 2000 SD 146, ¶9, 619 NW2d 516, 519 (citing Permann v. Dep't of Labor, Unemployment Ins. Div., 411 NW2d 113 (SD 1987)). For an agency finding of fact to be clearly erroneous, a court must be definitely and firmly convinced, after reviewing all the evidence, that the agency made a mistake. Mettler v. Sibco, Inc., 2001 SD 64, ¶7, 628 NW2d 722, 723-24 (citation omitted). We consider deposition testimony and documentary evidence de novo. Truck Ins. Exchange v. CNA, 2001 SD 46, ¶6, 624 NW2d 705, 708 (citing Wagaman v. Sioux Falls Const., 1998 SD 27, ¶12, 576 NW2d 237, 240). However, we defer to the agency on the credibility of a witness who testified live because the agency "is in a better position than the circuit court to evaluate the persuasiveness of [witness] testimony." *Lends His Horse*, 2000 SD 146, ¶15, 619 NW2d at 520 (citing *Matter of J.M.V.D.,* 285 NW2d 853, 855 (SD 1979)). Further, "[d]ue to the deference given the Department, '[w]e do not substitute our judgment for that of [the] Department on the weight of the evidence.'" *Id.* ¶9 (quoting Shepherd v. Moorman Mfg., 467 NW2d 916, 919 (SD 1991)).

## ANALYSIS

[¶12.]     South Dakota workers' compensation law allows for rehabilitation benefits when the injured employee "is unable to return to the employee's usual and customary line of employment." SDCL 62-4-5.1. Benefits are provided as follows:

> If an employee suffers disablement as defined by subdivision 62-8-1(3) or an injury and is unable to return to the employee's

usual and customary line of employment, the employee shall receive compensation at the rate provided by § 62-4-3 up to sixty days from the finding of an ascertainable loss if the employee is actively preparing to engage in a program of rehabilitation as shown by a certificate of enrollment. Moreover, once such employee is engaged in a program of rehabilitation which is reasonably necessary to restore the employee to suitable, substantial, and gainful employment, the employee shall receive compensation at the rate provided by § 62-4-3 during the entire period that the employee is engaged in such program. Evidence of suitable, substantial, and gainful employment, as defined by § 62-4-55, shall only be considered to determine the necessity for a claimant to engage in a program of rehabilitation.

SDCL 62-4-5.1. In order to qualify for rehabilitation benefits, the claimant must

meet a five-part test that includes proof that he is *"unable to return to his usual and*

*customary line of employment."* Sutherland v. Queen of Peace Hosp., 1998 SD 26,

¶13, 576 NW2d 21, 25 (emphasis added) (citations omitted).[3] A claimant's burden

of proof is by a preponderance of the evidence. Progressive Halcyon Ins. Co. v.

---

3.     The five part test includes the following:

> 1. The employee must be unable to return to his usual and customary line of employment;
>
> 2. Rehabilitation must be necessary to restore the employee to suitable, substantial, and gainful employment;
>
> 3. The program of rehabilitation must be a reasonable means of restoring the employee to employment;
>
> 4. The employee must file a claim with his employer requesting the benefits; and
>
> 5. The employee must actually pursue the reasonable program of rehabilitation.

*Sutherland*, 1998 SD 26, ¶13, 576 NW2d at 25 (citations omitted).

Philippi, 2008 SD 69, ¶16, 754 NW2d 646, 652-53 (quoting Fair v. Nash Finch Co., 2007 SD 16, ¶9, 728 NW2d 623, 628).

[¶13.] The evidence presented at the hearing before the ALJ consisted of live testimony from McKibben, Tom Audet, McKibben's rehabilitation counselor, and Denise Wieker, Horton's human resources manager. Jim Miller, the workers' compensation representative on McKibben's case, appeared by deposition. The medical reports of Dr. Westbrook, Dr. Werth, Dr. O'Leary, and Dr. Farnham were stipulated into the record.

[¶14.] Based on the evidence, the ALJ found McKibben had met his burden of proof and had satisfied the statutory requisites for rehabilitation benefits. The ALJ found that McKibben's injury –"inguinal hernia and subsequent nerve damage" occurred "in the scope and course of his employment" and "was treated as compensable." It was not disputed that McKibben suffered 15% impairment to his whole person as a result of his injury and that he was physically restricted to lifting no more than 25 pounds. Horton provided him a light duty job with frequent breaks in an attempt to accommodate his restrictions and pain. Even so, the ALJ found that McKibben was unable to work a full shift because of the pain he experienced. The ALJ found that McKibben's "testimony regarding his pain was credible." The ALJ found that McKibben had proved that the severity of his pain, even with the job accommodations, prevented him from returning to his usual and customary line of employment as a machinist.

[¶15.] On appeal, we review the entire record to determine whether the ALJ's "findings, inferences, conclusions, or decisions are . . . [c]learly erroneous[.]" SDCL

#25000

1-26-36(5).  The ALJ found McKibben's testimony concerning his debilitating pain to be credible.  Additionally, the ALJ determined that "the medical records provided objective evidence of Claimant's pain."  McKibben's treating physicians acknowledged that medical treatment may not alleviate McKibben's pain.  Before Dr. O'Leary performed the third and final surgery, Dr. Westbrook indicated that the pain may return.  Dr. Westbrook wrote in her report:

> If this is a nerve that is entangled in the scar tissue it is plausible the scar tissue could be removed, however, regrowth of the scar tissue could re-create pain that is more severe. Additionally, if the nerve is actually near the mesh I am uncertain if additional surgery would be of benefit.

Dr. O'Leary also reported that surgically resecting the ilioinguinal nerve may not resolve the pain.  Dr. O'Leary described McKibben's condition as follows:

> The pain is fairly classic going down into the medial thigh and into the region of the inner scrotum.  The patient has had a re-exploration about a month ago.  At that time it was felt the internal ring was somewhat tight and that was loosened up.  No specific nerves were actually removed at that time.  The patient continued to have pain postoperatively and was sent down for further evaluation.  He does appear to have trigger points along the area of the nerve and over the wound medially with tapping. I have recommended that we go ahead and explore the groin and then resect the ilioinguinal nerve.  He understands that this may not resolve his pain problem, that pain may recur, that he will have a numb area, and that there is a chance of infection, bleeding, etc.  He is very desperate to get his pain under control.

Several months after the final surgery, Dr. Westbrook acknowledged McKibben still had pain and may need to consider retraining.  She wrote, "[i]t is possible the [pain] could stem from right inguinal nerve entrapment syndrome, however, the patient's pain did not improve after having a right inguinal nerve block[,]" and "[i]f the

patient's pain does not improve despite therapy consideration of a reduced work load or re-training to a job with minimal or no bending may be warranted."

[¶16.] Horton and AHA argue that the FCE and the opinion of their expert, Dr. Farnham, outweigh the other evidence and should control. Farnham's report indicated that McKibben had an average pain level of six on a scale from zero to ten (with ten being excruciating and tortuous pain). While he did not discount the subjective pain McKibben felt, Dr. Farnham relied on the FCE that McKibben was physically capable of working an eight-hour shift. Dr. Farnham suggested that a disorder that coverts psychological symptoms to physical symptoms *may* explain McKibben's pain. Dr. Farnham's report also discussed the "brief psychological evaluation" of McKibben. The psychological evaluation reported that "[i]ndividuals who score as [McKibben] did sometimes are found to be suffering from a [disorder that converts psychological symptoms to physical symptoms]. . . . It should be noted, however, that the [psychological evaluation], in and of itself, is not sufficient to rule out organic pathology."

[¶17.] We have previously determined that "[w]hen presented with medical expert testimony, [the] Department is 'free to accept all of, part of, or none of, an expert's opinion.'" *Wagaman*, 1998 SD 27, ¶18, 576 NW2d at 241 (quoting Hanson v. Penrod Constr. Co*.,* 425 NW2d 396, 398 (SD 1988)). The Department gave more weight to the opinion of Dr. Westbrook and to the other physicians who treated McKibben than it gave to Dr. Farnham who examined McKibben on behalf of the employer. *See* SDCL 62 -7-1. Likewise, the ALJ is free to consider whether to accept all or part of the FCE, and determine how much weight to afford it in light of

all the evidence. The ALJ found McKibben credible when he testified his pain prevented him from working as a basic machinist. Although Horton and AHA argue on appeal that McKibben failed to show that the level of pain was caused by the work injury, a fair reading of the evidence indicates otherwise. Indisputably, the work-related hernia caused McKibben pain that was not alleviated by the surgeries and treatment. The ALJ believed McKibben's testimony that the severity of the pain prevented him from working full-time as a basic machinist.

[¶18.]     Reviewing courts must give great weight to the ALJ's findings of fact. SDCL 1-26-36. The circuit court's judgment cannot be substituted for the judgment of the Department regarding the weight of the testimony and evidence. *See* Gordon v. St. Mary's Healthcare Ctr., 2000 SD 130, ¶35, 617 NW2d 151, 160 (quoting Loewen v. Hyman Freightways, Inc., 1997 SD 2, ¶11, 557 NW2d 764, 767). Even considering the deposition and record evidence de novo, the ALJ's findings of fact are not clearly erroneous. *See Truck Ins. Exchange*, 2001 SD 46, ¶6, 624 NW2d at 708 (citing *Wagaman*, 1998 SD 27, ¶12, 576 NW2d at 240).

[¶19.]     Horton and AHA argued to the ALJ that McKibben should not receive benefits because McKibben's lack of improvement was due to his failure to complete physical therapy sessions. The ALJ, however, determined McKibben was unable to return to his usual and customary line of employment. The ALJ further determined there was insufficient medical evidence "to show that [McKibben]'s inability to return to his usual and customary line of employment [was] due to an aggravation of his condition caused by his alleged refusal to attend physical therapy." Horton and AHA advanced a somewhat different argument on appeal.

[¶20.] Instead, Horton and AHA argued to the circuit court and on appeal to this Court, that "the record unequivocally shows McKibben lost his job *not* because he was unable to do it, but because he repeatedly violated employer's reasonable, long-established policy requiring medical documentation of absences – a policy McKibben could have easily obeyed, but inexplicably refused to do so."  The circuit court accepted this argument and, with no analysis or citation to the evidence, found that the ALJ's findings regarding McKibben's pain were clearly erroneous.  The ALJ found that McKibben testified credibly that he did not seek a doctor's note because Dr. Westbrook told him that there were no other treatment options for him.  The ALJ also found that "the requirement that [McKibben] obtain further medical proof of his pain was unreasonable."

[¶21.] In the recent case of *Wellman v. Schad*, we determined that "in order to receive [temporary permanent disability], the claimant bears the burden of proving loss of income or ability to earn an income attributable to the injury."  *See* 2009 SD 46, ¶17, --- NW2d ---.  In *Wellman*, it was undisputed that the employee was terminated due to his misconduct.  Unlike *Wellman*, the ALJ here found that McKibben's work-related injury caused an inability to perform his duties.  A reviewing court "shall give great weight to the findings made and inferences drawn by an agency on questions of fact."  SDCL 1-26-36.

[¶22.] Therefore, the circuit court's reversal of the Department's ruling was error.  We reverse the circuit court's order determining that McKibben was not entitled to rehabilitation benefits and reinstate the Department's ruling.

#25000

[¶23.] GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, and SABERS, Retired Justice, concur.